TODD A. ROBERTS (SBN 129722)
NICOLE S. HEALY (SBN 157417)
EDWIN B. BARNES (SBN 295454)
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street, Suite 500
Redwood City, CA 94063-2052
Telephone: (650) 364-8200
Facsimile: (650) 780-1701
Email:       todd.roberts@rmkb.com
             nicole.healy@rmkb.com
             edwin.barnes@rmkb.com

Attorneys for Defendants
CHRIS BIDDY, ASTRO DIGITAL US INC., AND
ASTRO DIGITAL, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBERCROFT TRADING LIMITED, a British Virgin Islands company; and DMITRI KUSHAEV, an individual,, <br><br> Plaintiffs, <br><br> v. <br><br> MIKHAIL KOKORICH, an individual; LIUDMILA KOKORICH, an individual; CHRIS BIDDY, an individual; ASTRO DIGITAL US INC. (f/k/a Aquila Space Inc.), a Delaware corporation; ASTRO DIGITAL, INC., a Delaware corporation; AND DOES 1 THROUGH 10, INCLUSIVE, <br><br> Defendants. | CASE NO. <br><br> (Formerly Santa Clara Superior Court Case No. 19CV352624) <br><br> **DEFENDANTS CHRIS BIDDY, ASTRO DIGITAL US INC., AND ASTRO DIGITAL, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT PURSUANT TO 28 U.S.C. §§ 1331 AND 1441(a) [FEDERAL QUESTION JURISDICTION]** <br><br> **DEMAND FOR JURY TRIAL [Fed. R. Civ. P., Rule 38(a)]** |

**TO ALL PARTIES, THEIR ATTORNEYS OF RECORD IN THIS ACTION, AND THE CLERK OF THE ABOVE-ENTITLED COURT:**

PLEASE TAKE NOTICE that Defendants CHRIS BIDDY ("BIDDY"), ASTRO DIGITAL US INC., and ASTRO DIGITAL, INC. (collectively "the ASTRO DIGITAL ENTITIES") hereby remove to the U.S. District Court for the Northern District of California, the State Court action described below, pursuant to 28 U.S.C. §§1331 and 1441(a). The grounds for this removal are set forth herein.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

I.    **THIS COURT HAS JURISDICTION PURSUANT TO 28 U.S.C. SECTION 1331**

1.    On August 8, 2019, plaintiffs Ambercroft Trading Limited ("Ambercroft") and Dmitri Kushaev ("Kushaev," and collectively, "Plaintiffs") filed a lawsuit in the Superior Court of the State of California for the County of Santa Clara, *captioned Ambercroft Trading Limited and Dmitri Kushaev v. Mikhail Kokorich, Liudmila Kokorich, Chris Biddy, Astro Digital Us Inc. (F/K/A Aquila Space Inc.), Astro Digital, Inc.*, and Does 1-10 (Case No. 19CV352624). A true and correct copy of the Complaint is attached hereto as Exhibit 1.

2.    Plaintiffs allege that, beginning in 2013, Defendant Mikhail Kokorich ("Kokorich") proposed to form a joint venture with Plaintiff Kushaev in which Kushaev would invest $10 million and Kokorich would raise an additional $10 million. The joint venture would be "centered around technology opportunities in space, such as the operation of satellite systems." Allegedly, Kushaev formed Ambercroft to invest in the joint venture. Plaintiffs further allege that Kokorich misappropriated the joint venture's assets, fired personnel who provided financial oversight including Kushaev, and diverted the joint venture's assets to the Astro Digital entities.

3.    Among other claims alleged in the Complaint, Plaintiffs assert that Defendants Kokorich, Biddy, and the Astro Digital Entities each violated and conspired to violate the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1962(c) and (d), Racketeer Influenced and Corrupt Organizations ("RICO") in connection with the joint venture and with Kokorich's alleged misappropriation of the joint venture's assets.

4.    Plaintiffs' RICO claims arise under the laws of the United States of America. Accordingly, these claims are removable pursuant to 28 U.S.C. §§ 1331 and 1441(a). Further, Plaintiffs state law claims are inextricably intertwined with their federal claims. This Court may therefore exercise supplemental jurisdiction over Plaintiffs' state law claims. *See* 28 U.S.C. § 1367(a). Accordingly, Plaintiff's Complaint is removable.

5.    Defendants Biddy, Astro Digital US, Inc., and Astro Digital, Inc., entered into a stipulation with Plaintiffs to effect service on Friday, September 20, 2019. A true and correct copy of the Parties' Stipulation is attached hereto as Exhibit 2.

6.    This Court has original jurisdiction of the action under 28 U.S.C. § 1331, and the

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

action is removable to this Court pursuant to 28 U.S.C. § 1441(a).  Removal to this judicial

district and division is proper because this district includes the County of Santa Clara where the

action is currently pending.  *See* 28 U.S.C. § 1441(a).

## II.      THIS NOTICE OF REMOVAL IS TIMELY FILED

7.      This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1441(a) because it

is filed within thirty days after Defendants stipulated to accept service of the Complaint, that is,

on September 20, 2019.  *See* 28 U.S.C. § 1446(b)(2)(B).

8.      Defendants are unanimous in removing this action to this Court; Defendants

Mikhai Kokorich and Liudmila Kokorich join in this Notice of Removal.  *See* 28 U.S.C. §

1446(b)(2)(A).

9.      Pursuant to 28 U.S.C. § 1446(d), Defendants are promptly filing a copy of this

Notice of Removal with the clerk of the Santa Clara County Superior Court and serving Plaintiffs

with the same.

10.      Defendants reserve the right to amend and/or supplement this Notice of Removal.

Dated:          October 21, 2019                          ROPERS, MAJESKI, KOHN & BENTLEY


By: */s/ Nicole S. Healy*
TODD A. ROBERTS
NICOLE S. HEALY
EDWIN B. BARNES
Attorneys for Defendants
CHRIS BIDDY, ASTRO DIGITAL US
INC., and ASTRO DIGITAL, INC.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

# EXHIBIT 1

E-FILED
8/8/2019 3:29 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
19CV352624
Reviewed By: R. Tien

1  LOEB & LOEB LLP
   OLEG (ALEX) STOLYAR (SBN 229265)
2  astolyar@loeb.com
   DONALD A. MILLER (SBN 228753)
3  dmiller@loeb.com
   JENNIFER JASON (SBN 274142)
4  jjason@loeb.com
   10100 Santa Monica Blvd., Suite 2200
5  Los Angeles, CA 90067
   Telephone: 310.282.2000
6  Facsimile: 310.282.2200

7  Attorneys for Plaintiffs
   Ambercroft Trading Limited and
8  Dmitri Kushaev

9           SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                  FOR THE COUNTY OF SANTA CLARA

11                                    19CV352624

12  AMBERCROFT TRADING LIMITED, a       **COMPLAINT FOR:**
    British Virgin Islands company; AND
13  DMITRI KUSHAEV, an individual       **1. BREACH OF FIDUCIARY DUTY;**

14              Plaintiffs,             **2. FRAUD**

15       v.                            **3. VIOLATION OF BUSINESS AND**
                                        **PROFESSIONS CODE §§ 17200,** *ET*
16  MIKHAIL KOKORICH, an individual;    *SEQ.*
    LIUDMILA KOKORICH, an individual;
17  CHRIS BIDDY, an individual; ASTRO   **4. VIOLATION OF 18 U.S.C. 1962(c) –**
    DIGITAL US INC. (f/k/a Aquila Space Inc.), a   **CIVIL RICO;**
18  Delaware corporation; ASTRO DIGITAL,
    INC., a Delaware corporation; AND DOES 1   **5. VIOLATION OF 18 U.S.C. 1962(d) –**
19  THROUGH 10, INCLUSIVE               **CIVIL RICO; and**

20              Defendants.            **6. UNJUST ENRICHMENT**

21                                     **DEMAND FOR JURY TRIAL**

22

23

24

25

26

27

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18039116.1
230322-10001                          COMPLAINT

Plaintiffs Ambercroft Trading Limited ("Ambercroft") and Dmitri Kushaev ("Kushaev," and together with Ambercroft, "Plaintiffs") allege as follows:

## I. INTRODUCTION

1. This action arises out of a fraudulent scheme perpetrated by defendant Mikhail Kokorich ("Kokorich"), with the aid of the other defendants, pursuant to which Kokorich first convinced Plaintiffs to invest $10 million into a joint venture with Kokorich to exploit certain space technologies in California and elsewhere (the "Joint Venture"), and then diverted and misappropriated the key assets of that Joint Venture in California, resulting in the unjust enrichment of Kokorich and the other defendants, and Plaintiffs' loss of their entire investment.

## II. JURISDICTION AND VENUE

2. Jurisdiction in this Court is proper because the claims arose within the jurisdiction of this Court, and because the amount of damages sought is within the jurisdiction of this Court.

3. Venue is proper in the County of Santa Clara under Sections 395 and 395.5 of the California Code of Civil Procedure because all of the defendants reside and/or conduct business in Santa Clara County, and much of the wrongful conduct alleged herein occurred in Santa Clara County.

## III. THE PARTIES

4. Plaintiff Ambercroft Trading Limited is a company registered in the British Virgin Islands and, through its investment in the Joint Venture, has done business in California.

5. Plaintiff Dmitri Kushaev is an individual, a citizen of the Russian Federation currently residing in Switzerland, and the beneficial owner and manager of Ambercroft during all times pertinent to this Complaint.

6. Plaintiffs are informed and believe, and based thereon allege, that defendant Mikhail Kokorich is an individual, residing in Los Altos Hills, California at all times pertinent to this Complaint.

7. Plaintiffs are informed and believe, and based thereon allege, that Defendant Liudmila Kokorich (the wife of Mikhail Korkorich) is an individual, residing in Los Altos Hills, California at all times pertinent to this Complaint.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18039116.1
230322-10001

2
COMPLAINT

8.     Plaintiffs are informed and believe, and based thereon allege, that defendant Chris Biddy is an individual residing in Sunnyvale, California at all times pertinent to this Complaint.

9.     Mikhail Kokorich, Liudmila Kokorich, and Chris Biddy are referred to collectively herein as the "Individual Defendants."

10.    Defendant Astro Digital US, Inc. ("ADU"), formerly known as Aquila Space Inc. ("Aquila"), is a Delaware corporation with its principal place of business in Santa Clara, California. Aquila and ADU will be collectively referred to as "ADU" in the Complaint, unless otherwise indicated.

11.    Defendant Astro Digital, Inc. is a Delaware corporation with its principal place of business in Santa Clara, California.

12.    Defendants ADU and Astro Digital, Inc. will collectively be referred to herein as the "Entity Defendants."

13.    Plaintiffs are informed and believe, and based thereon allege, that the Individual Defendants exercised complete dominion and control over the Entity Defendants at all times pertinent to this Complaint (and still do so), including the Entity Defendants' daily affairs, properties, rights, and interests, such that it renders the Entity Defendants mere shells and instrumentalities of the Individual Defendants.

14.    Plaintiffs are further informed and believe, and based thereon allege, that the Entity Defendants were formed for the purpose of furthering the Individual Defendants' fraudulent scheme, and that adherence to the separate existences of the Entity Defendants would permit an abuse of trust and corporate privilege that would sanction fraud and promote injustice.

15.    The true names and capacities of defendants DOES 1 to 10, inclusive (collectively, the "DOE Defendants"), are unknown to Plaintiffs at this time, who therefore sue these defendants by such fictitious names.

16.    Plaintiffs are informed and believe, and based thereon allege, that each defendant named as a DOE is responsible for each and every obligation hereinafter set forth. Plaintiffs will amend this Complaint by inserting true names in lieu of the fictitious names, together with apt and proper charging allegations, when the true names and capacities are ascertained. As used

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18039116.1
230322-10001

3
COMPLAINT

1   hereinafter, and unless otherwise indicated, the term "Defendants" refers to and means collectively

2   all of the Individual Defendants, the Entity Defendants, and the Doe Defendants.

3          17.    Plaintiffs are informed and believe, and based thereon allege, that each Defendant

4   named in this Complaint, including each Doe, was at all times mentioned, and now is, acting as

5   the agent, servant, subsidiary, partner, member, associate, representative, employee, and/or alter

6   ego of each of the other Defendants, including DOES, and all of the things alleged to have been

7   done by the Defendants and were done in the course and scope of their agency, employment,

8   service, subsidiary relationship, partnership, membership, association, or representative

9   relationship, with the knowledge and consent of their respective principals, employers, masters,

10   parent corporations, partners, members, associates or representatives.

11          18.    Plaintiffs are further informed and believe, and based thereon allege, that

12   Defendants have formed and engaged in a conspiracy, common enterprise and common course of

13   conduct, the purpose of which was and is to engage in the wrongdoing alleged in this Complaint.

14   The conspiracy, common enterprise and common course of conduct continue to the present, and

15   Plaintiffs have each suffered damages resulting from Defendants' operation of their conspiracy,

16   common enterprise and common course of conduct.

17   **IV.    FACTUAL ALLEGATIONS**

18          **A.    Kokorich Convinces Plaintiffs to Invest $10 Million in the Joint Venture.**

19          19.    Kokorich markets himself as a "space entrepreneur."  In 2013, while Kokorich was

20   staying in California, Kokorich asked Kushaev to enter into a joint venture centered around

21   technology opportunities in space, such as the operation of satellite systems (i.e., the Joint

22   Venture).  During their discussions, which included multiple emails to Kushaev from Kokorich in

23   California, Kokorich represented to Kushaev that the proposed Joint Venture would be profitable.

24          20.    As a few representative examples, Kokorich communicated with Kushaev (via

25   email and phone) on at least the following dates:

26          (a)    On March 1, 2013 and March 26, 2013, Kokorich sent Kushaev emails

27   inviting Kushaev to travel to Silicon Valley, and further inviting Kushaev to stay at Kokorich's

28   house in Silicon Valley so that they could discuss the Joint Venture.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18039116.1
230322-10001

4
COMPLAINT

(b)     On April 26, 2013, Kokorich sent Kushaev an email with a proposed Term Sheet regarding Kushaev's investment into the Joint Venture.

(c)     On or about September 26, 2013, Kokorich sent Kushaev an email asking him to invest $10,000,000 into the Joint Venture

(d)     Between March and September 2013, Kushaev and Kokorich also had multiple phone calls, during which Kokorich urged Kushaev to invest into the Joint Venture, and promised him that the investment would be profitable, and that Kushaev could trust Kokorich with his money.  For example, in late June 2013, Kokorich had a telephone conversation with Kushaev, during which he proposed that Kushaev invest $10,000,000 in the Joint Venture, and went through the rest of the proposed terms of the Joint Venture set forth in paragraph 21 below.  Upon information and belief, Kokorich was in the United States at the time he made those calls to Kushaev regarding the Joint Venture.

21.     In September 2013, relying on Kokorich's verbal and written representations concerning the Joint Venture, Kushaev agreed to enter into the Joint Venture proposed by Kokorich.  The key terms of that Joint Venture were as follows:

a.     Kushaev would invest $10,000,000 into the Joint Venture, and Kokorich would raise an additional $10,000,000 from third party investors;

b.     Both Kushaev and Kokorich would form companies for purposes of the Joint Venture, through which they would hold their respective ownership interests in the Joint Venture;

c.     Kushaev would hold an approximately 15% interest in the Joint Venture, while Kokorich would hold the controlling interest in the Joint Venture, serve as the Chief Executive Officer ("CEO") of the holding company that would ultimately own the Joint Venture assets, and would be responsible for the US operations of the Joint Venture;

d.     Both Kushaev and Kokorich would participate in the profits of the Joint Venture pursuant to their respective ownership interests in the Joint Venture; and

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18039116.1
230322-10001

5
COMPLAINT

e.      Kushaev would be appointed to executive positions in those companies formed by Kokorich through which the Joint Venture assets would be held, so that Kushaev could keep an eye on Plaintiffs' investment.

22.     To implement the Joint Venture, Kushaev and Kokorich took the following steps.

23.     Kushaev formed Ambecroft in September 2013 and, through Ambercroft, invested $10 million into the Joint Venture in late September 2013.

24.     Kokorich formed Dauria Holding International Limited ("DHIL") in September 2013, so that Kushaev (through Ambercroft) could hold a 14.29% interest in DHIL.  Kokorich, at all relevant times to this Complaint, owned a controlling interest in DHIL.

25.     Pursuant to the corporate structure set up by Kokorich to implement the Joint Venture, DHIL was merely a holding company, and DHIL's only asset was its interest in Dauria Aerospace Holding Limited ("DASH").   Kokorich was also the founder of DASH, and served as a director of DASH and its Chief Executive Officer during all times pertinent to this Complaint. Thus, Kokorich also controlled DASH, in addition to controlling DHIL.

26.     Plaintiffs are informed and believe, and based thereon allege, that most of the moneys invested by Plaintiffs into the Joint Venture were transferred at the direction of Kokorich to the United States in late 2013 and 2014, and used for the operations of the Joint Venture in the United States, including specifically the operations of a US subsidiary of DASH, Canopus Systems US LLC ("Canopus"), a California limited liability company.  DASH owned Canopus through Astra Digital, LLC ("Astra"), a Delaware limited liability holding company for Canopus.

27.     At Kokorich's direction, Canopus held the Joint Venture's most valuable assets, including DASH's highly valuable Perseus-M space satellites.  Canopus also employed DASH's key personnel and held the rights to the Joint Venture's key intellectual property concerning space technology.

28.     Kokorich was responsible for the day-to-day operations of Canopus, pursuant to the terms agreed to by Kushaev and Kokorich as part of the Joint Venture.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18039116.1
230322-10001

6
COMPLAINT

29.     Lastly, pursuant to the terms of the Joint Venture, Kushaev was initially employed by DASH as its managing director in charge of finance strategy and mergers and acquisitions, so that Kushaev could keep an eye on Plaintiffs' investment in the Joint Venture.

**B.      After Obtaining Plaintiffs' Moneys, Kokorich Misappropriates Those Moneys by Diverting the Joint Venture's Assets to Himself and the Other Defendants.**

30.     As explained in further detail below, Kokorich used his control over the Joint Venture and its US operations to misappropriate Plaintiffs' moneys and the Joint Venture's most valuable assets, which resulted in the unjust enrichment of Kokorich and the other Defendants, and the total loss of Plaintiffs' $10 million investment in the Joint Venture.

1.      Kokorich fires key personnel who provided financial oversight for the Joint Venture.

31.     On or about May 29, 2014, at Kokorich's instruction, Kushaev was terminated from his position as the managing director in charge of finance strategy and mergers and acquisitions for DASH and its subsidiaries.  Kokorich caused an email to that effect to be sent to Kushaev on May 29, 2014, on which Kokorich was copied.

32.     The stated reason for Kushaev's termination was that his contract had expired. However, Plaintiffs are now informed and believe, and based thereon allege, that Kushaev was fired so that he would not have any access to or oversight of the financial operations of DASH and its US subsidiaries, which allowed Kokorich to subsequently misappropriate Plaintiffs' funds.

33.     At or about the same time, Kokorich fired the chief financial officer (Dmitry Sokolsky) and the group treasurer and controller (Maria Pershina) for DASH and its subsidiaries. Again, Plaintiffs are informed and believe, and based thereon allege, that these individuals were fired because they were not under the control of Kokorich and, thus, Kokorich wanted to remove them so he could subsequently divert the assets of the Joint Venture without Plaintiffs' knowledge.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18039116.1
230322-10001

7

COMPLAINT

2.   <u>After Kokorich's request to Plaintiffs for more money is denied, he forms</u>
     <u>the Astro Digital Entities, to which he then diverts the Joint Venture Assets.</u>

34.     Upon information and belief, between October 2013 and late 2014, Kokorich mismanaged the Joint Venture, and particularly its US operations.  As a result, in late 2014, Kokorich asked Plaintiffs to invest more moneys into the Joint Venture.  Plaintiffs refused.

35.     Kokorich then, between December 2014 and March 2015, caused to be formed several new legal entities, with the aid of defendant Biddy – a close Kokorich associate and Vice President of Research and Development at Canopus – to which Kokorich subsequently diverted the Joint Venture's assets

36.     Specifically, on or about December 31, 2014, defendant Biddy formed a new entity called Aquila Space Inc., which was unaffiliated with the Joint Venture.  Plaintiffs are informed and believe that Biddy formed Aquila at the direction, and with the knowledge of, Kokorich.

37.     Defendant Biddy is a former executive of Canopus who left Canopus and immediately began working for Aquila after its formation in 2015.  Aquila was originally located at the same address as Canopus – *i.e.*, Building 503, 340 Cody Rd., Moffet Field, CA 94305.

38.     Plaintiffs are informed and believe, and based thereon allege, that, on or about February 5, 2015, Kokorich and Biddy used the California Secretary of State online electronic filing portal and/or the US mail to file the "Statement and Designation by Foreign Corporation" to register Aquila to do business in California.

39.     The agent for service of process for Aquila was another close Kokorich associate, Artiom Anisimov, who was also an officer and agent for service of process for Canopus; and, on information and belief, also served as Kokorich's personal assistant.

40.     Aquila's corporate purpose, as set out and transmitted electronically on its website, was designing, building and operating nanosatellites, and its mission was to provide daily multi-spectral satellite imagery through their landmapper constellations.  This is the same business as the business that Canopus was engaged in on behalf of the Joint Venture.

41.     Plaintiffs are further informed and believe, and based thereon allege, that on or about March 5, 2015, Kokorich caused to be formed another new entity, Astro Digital, Inc.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18039116.1
230322-10001

8

COMPLAINT

42.     On or about March 13, 2015, Astro Digital, Inc. used the California Secretary of State online electronic filing portal and/or the US mail to file the "Statement and Designation by Foreign Corporation" to register to do business in California. The person who signed this filing was the same Mr. Anisimov (a close associate of Kokorich) who was listed as the agent for service of process for Aquila and Canopus. Plaintiffs are informed and believe, and based thereon allege, that this filing was done at the instruction, and with the knowledge, of Kokorich.

43.     The name, "Astro Digital," is virtually identical to the name of one of DASH's US subsidiaries, Astra Digital – the parent company of Canopus in the corporate structure initially set up by Kokorich to implement the Joint Venture.

44.     On or about November 12, 2014, Kokorich caused Astra Digital to change its name to Dauria Geo. Kokorich caused the name change by filing the "Amended Statement by Foreign Corporation" through either the California Secretary of State online electronic filing portal or the US mail. Kokorich signed that Statement as Dauria GEO's President.

45.     Upon information and belief, Kokorich changed Astra Digital's name to Dauria GEO so that he could subsequently use Astro Digital to compete with the Joint Venture.

46.     Plaintiffs are informed and believe that, on or about December 31, 2015, Aquila merged with Astro Digital, Inc., via a stock-for-stock exchange, following which Aquila changed its name to Astro Digital US, Inc. (i.e., ADU).

47.     To register the name change, on or about May 17, 2016, ADU filed the "Amended Statement by Foreign Corporation" through either the California Secretary of State online electronic filing portal or the US mail. This Certificate of Amendment was signed by defendant Biddy. Plaintiffs are informed and believe, and based thereon allege, that this filing was done at the instruction, and with the knowledge, of Kokorich.

48.     After Aquila changed its name to Astro Digital US., Inc., Astro Digital, Inc. became a wholly owned subsidiary of ADU.

49.     Plaintiffs are informed and believe, and based thereon allege, that Astro Digital, Inc., Aquila, and Astro Digital US, Inc. (collectively, the "Astro Digital Entities") were each

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18039116.1
230322-10001

9

COMPLAINT

1   formed at the direction of Kokorich for the purpose of receiving and taking over the assets and

2   business of the Joint Venture, which is precisely what occurred as described below.

3       3.    Defendants surreptitiously transfer Joint Venture assets from Canopus to

4             ADU.

5   50.   Kokorich first attempted to divert assets from Canopus to the Astro Digital Entities

6   that he caused to be created by obtaining the board approval of DASH to do so.  The tactic did not

7   work.  For example, on January 30, 2015, Kokorich emailed a notice of a board meeting, along

8   with a draft supply contract and specifications, which required Canopus to purchase a number of

9   products from Aquila for $520,000.  The board did not act on the draft contract, pending

10  explanations regarding the contract from Kokorich that were never provided.

11  51.   Kokorich then arranged for a transfer of the Joint Venture assets (held by Canopus)

12  to the Astro Digital Entities in a different manner, this time without seeking approvals.

13  Unbeknownst to Plaintiffs at the time, between March and April 2015, after Kokorich had

14  removed the individuals who provided financial oversight for the Joint Venture, several

15  transactions were made between Canopus and Aquila without notice to Plaintiffs.

16  52.   For example, on March 6, 2015, Kokorich caused Canopus to enter into an

17  agreement with Aquila (the co-called "Subcontractor Agreement"), by which Canopus transferred

18  to Aquila valuable intellectual property and two Perseus-M satellites launched in 2014 and still in

19  orbit.  The market value of the satellites was well over $5 million.  But pursuant to the agreement,

20  Canopus was to receive just over $2 million total for both satellites, far below their true market

21  value.  Notably, Plaintiffs are informed and believe, and based thereon allege, that Aquila did not

22  even pay the contractual amounts for these assets in any event.

23  53.   Plaintiffs are informed and believe, and based thereon allege, that drafts and final

24  versions of the Subcontractor Agreement were transmitted by Kokorich or at Kokorich's direction

25  via email between Canopus and Aquila in or around March 2015.  Plaintiffs were not copied on

26  these emails.

27  54.   Kokorich also arranged for the execution of a Joint Development and Cooperation

28  Agreement between Canopus and Aquila, dated April 6, 2015 (the "Cooperation Agreement").

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18039116.1
230322-10001

10

COMPLAINT

1    Under the Cooperation Agreement, Aquila obtained substantially all of Canopus's intellectual

2    property rights listed in the agreement.  Plaintiffs are informed and believe, and based thereon

3    allege, that drafts and final versions of the Cooperation Agreement were transmitted between

4    Canopus and Aquila via email by Kokorich or at Kokorich's direction in or around April 2015.

5    Plaintiffs were not copied on these emails.

6        55.    After receiving complaints regarding the lack of commercial justification for the

7    above-referenced transactions between Aquila and Canopus from a third party investor, Kokorich

8    took yet a new tack.

9        56.    On August 3, 2015, Kokorich sent an email to the members of DHIL asking for an

10   extraordinary board meeting of DASH to take place on August 10, 2015.  The notice was

11   inadequate, and Kokorich was so advised by Kushaev.  Kokorich nonetheless then sent a "formal

12   notice" of the August 10 meeting via email on August 7, 2015.

13       57.    Despite being advised that the notice for the August 10, 2015 meeting was

14   improper, and that Ambercroft's representative would be unable to attend, Kokorich convened the

15   meeting on August 10, 2015.  During that meeting, which Plaintiffs are informed and believe took

16   place via video conference and/or telephonically, Kokorich obtained approval from the DASH

17   Board for the so-called "Framework Agreement," pursuant to which the prior Subcontractor

18   Agreement and Cooperation Agreement would be declared null and void, and the Joint Venture

19   assets would instead be transferred to Aquila pursuant to the Framework Agreement.  Plaintiffs

20   were not present at this meeting.

21       58.    Kokorich then caused DASH and Canopus to enter into the so-called "Framework

22   Agreement" with Aquila, effective August 11, 2015, pursuant to which Kokorich caused DASH

23   and Canopus to sell the Joint Venture assets to Aquila at far below market value.

24       59.    Plaintiffs are informed and believe, and based thereon allege, that the final versions

25   of the Framework Agreement were transmitted between Defendants Kokorich and Biddy via email

26   or around August 11 and 12, 2015.  Again, Plaintiffs were not copied on these emails.

27       60.    Plaintiffs are informed and believe, and based thereon allege, that by August 12,

28   2015, Biddy was already an employee of Aquila with an Aquila email address.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18039116.1
230322-10001

11
COMPLAINT

61.     The Framework Agreement had no legitimate business purpose, provided little to no adequate economic or other benefit to the Joint Venture, and served only to confer an unjustified benefit for the Defendants.  (As described below, Plaintiffs discovered in 2018 that each of the Individual Defendants has a substantial ownership interest in ADU.)

62.     Kokorich tried to conceal the fraudulent nature of the Framework Agreement transfers from Plaintiffs by claiming that the Framework Agreement was the result of competitive bidding.  To that end, Kokorich sent reports via email (for example, on August 4, 2015) with the purported "bids" of various companies.  The result of the process was as Kokorich designed it – Aquila was purportedly the highest bidder – an announcement that Kokorich sent via email.

63.     However, Plaintiffs have since been informed and believe, and based thereon allege, that the purported competitive bidding was actually a sham, designed from the beginning to reach a particular outcome – for the Joint Venture's assets to go to the Astro Digital Entities owned and controlled by Kokorich, for amounts far below their actual fair market value.

**C.      After Kokorich Misappropriates the Joint Venture's Assets, He Causes ADU to Compete with the Joint Venture Entities.**

64.     Plaintiffs are informed and believe that after the diversion of Canopus' key assets to the Astro Digital Entities via the Framework Agreement on or about August 11, 2015, the Individual Defendants caused ADU to go into competition with the Joint Venture, using DASH's and Canopus's tangible assets, intellectual property, and goodwill as if they belonged to ADU.

65.     Specifically, on its **website**, ADU described the products it offers with specifications that closely resemble the specifications of Canopus products.  For example, Defendants marketed ADU on its **website** as the operator of the two Perseus-M satellites, and has subsequently caused ADU to enter into agreements with companies with which DASH and Canopus were previously in negotiations.

66.     There is substantial overlap between the employees and management of ADU and Canopus, with those persons simply moving from Canopus to ADU.   For example, Damir Begishev, who served as the CFO of Canopus, became the CFO of ADU.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18039116.1
230322-10001

12
COMPLAINT

67.     Notably, all of the above wrongful conduct occurred while Kokorich was still the Chief Executive Officer of DASH and entrusted by Plaintiffs with managing their interests in the Joint Venture and, specifically, the management of the Joint Venture's US subsidiaries.

68.     Not surprisingly, Canopus went out of business after Defendants' scheme was implemented and they had stripped it of its most valuable assets.

**D.      Plaintiffs Did Not Discover that Kokorich and His Wife Had Ownership Interests in ADU Until 2018.**

69.     While Plaintiffs disagreed with some of Kokorich's business decisions while he was managing the Joint Venture, Plaintiffs did not learn until 2018 that Kokorich and his wife had ownership interests in the new ADU entity and, thus, had personally profited by transferring the Joint Venture assets from Canopus to Aquila.

70.     As discussed above, Kokorich had removed Kushaev from his position as the managing director in charge of finance strategy for DASH precisely so that Plaintiffs would not have access to the financial information concerning the US operations of the Joint Venture.

71.     Moreover, in October 2015, when Plaintiffs requested that Kokorich and his entities provide more information regarding the transfers of assets from Canopus to Aquila, Kokorich refused.  For example, Kokorich caused one of his associates, Dmitri Khan, to send an email to Plaintiffs on October 20, 2015, refusing to provide such information.

72.     Further, Kushaev had several conversations with Kokorich in late 2015 and 2016, during which Kushaev expressly asked Kokorich if he or his family held any ownership interest in any of the Astro Digital Entities.  Kokorich categorically denied this.

73.     Plaintiffs then engaged in protracted settlement negotiations with Kokorich over the next few years (through early 2019) seeking to informally resolve the dispute concerning the loss of Plaintiffs' investment in the Joint Venture, which proved unsuccessful.

74.     In the meantime, Plaintiffs discovered in 2018 that both Kokorich and his wife had substantial ownership interests in ADU and, thus, had personally profited from the transfer of the Joint Venture assets from Canopus to ADU at far below market value.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18039116.1
230322-10001

13

COMPLAINT

75.     In 2018, Plaintiffs also discovered that defendant Biddy had a substantial ownership interest in ADU and, thus, had also personally profited from the transfer of Canopus assets to ADU for below market value.

76.     This action followed.

## FIRST CAUSE OF ACTION

## FOR BREACH OF FIDUCIARY DUTY

### (Against Defendant Kokorich by Plaintiff Kushaev)

77.     Plaintiffs incorporate by reference those allegations set forth in the preceding paragraphs as though set forth fully herein.

78.     As a joint venturer with Kushaev, Kokorich owed Kushaev fiduciary duties of care and loyalty, which required Kokorich to, among other things, act with the utmost good faith and with full disclosure in all matters pertaining to the Joint Venture and to refrain from acting in his own self-interest at the expense of Kushaev.

79.     Kokorich breached his fiduciary duties of care and loyalty to Kushaev by, among other things, mismanaging Kushaev's multi-million dollar investment in the Joint Venture, mismanaging the Joint Venture, and misappropriating the US assets of the Joint Venture.

80.     Kushaev was damaged in an amount of many millions of dollars (the exact amount to be proven at trial), as a result of the above-referenced breaches.

81.     Plaintiffs are informed and believe, and based thereon allege, that Kokorich acted as alleged herein with the intent to deprive Kushaev of property and to injure Kushaev such that Kokorich's actions constitute oppression or malice within the meaning of California Civil Code § 3294. Kokorich's conduct was intended to cause injury to Kushaev and was carried on by Kokorich in willful and conscious disregard of Kushaev's rights. Kokorich's conduct was despicable, oppressive, and outrageous, justifying the imposition of punitive and exemplary damages against Kokorich in an amount sufficient to punish him, to make an example of him, and to deter such conduct in the future.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18039116.1
230322-10001

14
COMPLAINT

**SECOND CAUSE OF ACTION**

**FOR FRAUD**

**(Against Defendant Kokorich by Plaintiff Kushaev)**

82.    Plaintiffs incorporate by reference those allegations set forth in the preceding paragraphs as though set forth fully herein.

83.    Kokorich made false representations to Kushaev and omitted material information from Kushaev, including the following:

   a.    Representing to Kushaev in various telephone calls between March and September 2013, including in late June 2013, that Kushaev could trust Kokorich with Kushaev's multi-million dollar investment; while, upon information and belief, Kokorich already planned to misappropriate Kushaev's moneys;

   b.    Representing to Kushaev in various telephone calls between March and September 2013 that Kushaev would be appointed to executive positions in those companies formed by Kokorich through which the Joint Venture assets would be held, so that Kushaev could keep an eye on Plaintiffs' investment; while, upon information and belief, Kokorich already planned to strip Kushaev of such positions, so as to help Kokorich subsequently misappropriate Kushaev's moneys;

   c.    Representing to Kushaev in various telephone calls in late 2015 and 2016 that Kokorich and his family members did not have any ownership interest in the Astro Digital Entities, while knowing those representations were false;

   d.    When asking Kushaev to invest $10,000,000 into the Joint Venture, failing to disclose to Kushaev that Kokorich planned to misappropriate the Joint Venture assets so that Kokorich and his wife could personally profit at Kushaev's expense;

   e.    Failing to disclose to Kushaev at the time the Framework Agreement was proposed and then executed on or about August 11, 2015, that Kokorich and his wife would hold ownership interests in the entity to which the Joint Venture assets were being transferred.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

84.     Kokorich, as well as Kokorich's wife, profited as a result of Kokorich's misrepresentations and omissions at the expense of Kushaev.

85.     The above misrepresentations and omissions were intended to conceal and did conceal from Kushaev the self-dealing engaged in by Kokorich until 2018.

86.     Had Kushaev been apprised of the above facts, he would not have entered into the Joint Venture, and would not have invested $10,000,000 for the purposes of the Joint Venture.

87.     As a result of the above-referenced misconduct by Kokorich, Kushaev sustained damages of many millions of dollars, the exact amount to be proven at trial.

88.     Kushaev is informed and believes, and based thereon alleges, that Kokorich acted as alleged herein with the intent to deprive Kushaev of property and to injure Kushaev, such that Kokorich's actions constitute fraud, oppression, or malice within the meaning of California Civil Code § 3294. Kokorich's conduct was intended to cause injury to Kushaev and was carried on by Kokorich in willful and conscious disregard of Kushaev's rights. The conduct of Kokorich was despicable, oppressive, and outrageous, justifying the imposition of punitive and exemplary damages against Kokorich in an amount sufficient to punish Kokorich, to make an example of Kokorich, and to deter such conduct in the future.

## THIRD CAUSE OF ACTION

### FOR VIOLATION OF BUSINESS & PROFESSIONS CODE §§ 17200 *ET SEQ.*

### (Against Defendants Kokorich, Biddy, the Entity Defendants and DOE Defendants)

89.     Plaintiffs incorporate by reference those allegations set forth in the preceding paragraphs as though set forth fully herein.

90.     Plaintiffs are informed and believe, and on that basis allege, that Defendants have engaged and continue to engage in unlawful, unfair, and/or fraudulent acts or practices in the conduct of their business, which acts or practices constitute unfair competition within the meaning of California's Unfair Competition Law ("UCL"), codified at Business and Professions Code §§ 17200, *et seq.*

91.     Defendants' unlawful, unfair, and/or fraudulent acts or practices include but are not limited to:

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18039116.1
230322-10001

16
COMPLAINT

1          a.      establishing the Astro Digital Entities for the purpose of diverting and

2  misappropriating the Joint Venture assets from the Joint Venture entities to ADU;

3          b.      implementing and entering into the Framework Agreement to divert the

4  Joint Venture assets from the Joint Venture entities to ADU without adequate consideration;

5          c.      directly competing against the Joint Venture entities using the assets,

6  intellectual property, and employees of the Joint Venture entities.

7      92.    Plaintiffs have been injured in fact and suffered damages as a result of Defendants'

8  illegal, unfair and fraudulent acts and practices.  Moreover, Defendants have been unjustly

9  enriched as a result of their illegal, unfair, and fraudulent acts and practices, and should be ordered

10  to make restitution to Plaintiffs of all such amounts unjustly received in a sum to be proven at trial,

11  but at least $10 million.

12      93.    In doing the acts alleged herein, the Defendants acted with oppression, fraud and

13  malice with intent to injure Plaintiffs and the acts herein alleged were in conscious disregard of

14  Plaintiffs' rights and interests.  Defendants' conduct was despicable, oppressive and outrageous,

15  justifying the imposition of punitive or exemplary damages against them in a sum that proof at the

16  time of trial may indicate as appropriate.

17      94.    Plaintiffs are informed and believe and based thereon allege that Defendants acted

18  as alleged herein with the intent to deprive Plaintiffs of property and to injure Plaintiffs such that

19  Defendants' actions constitute fraud, oppression, or malice within the meaning of California Civil

20  Code § 3294.  The Defendants' conduct was intended to cause injury to Plaintiffs and was carried

21  on by the Defendants in willful and conscious disregard of Plaintiffs' rights. The conduct of the

22  Defendants was despicable, oppressive, and outrageous, justifying the imposition of punitive and

23  exemplary damages against the Defendants in an amount sufficient to punish Defendants, to make

24  an example of the Defendants, and to deter such conduct in the future.

25

26

27

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18039116.1
230322-10001

17

COMPLAINT

**FOURTH CAUSE OF ACTION**

**FOR VIOLATION OF 18 U.S.C. 1962(c) (RICO)**

**(Against Defendants Kokorich, Biddy, the Entity Defendants and DOE Defendants)**

95.     Plaintiffs incorporate by reference those allegations set forth in the preceding paragraphs as though set forth fully herein.

96.     Plaintiffs are informed and believe, and based thereon allege, that Kokorich, Biddy, and the Entity Defendants each violated the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1962, *et seq.*, Racketeer Influenced and Corrupt Organizations ("RICO"), in connection with a scheme devised, conducted and/or participated in by these Defendants; each of whom is associated with an unlawful enterprise dealing in interstate commerce; and each of whom conducted or participated, directly or indirectly, in that enterprise through a pattern of racketeering activity by committing mail fraud and/or wire fraud, as described herein.

97.     Each of the Defendants is a "person" within the meaning of 18 U.S.C. § 1961(3).

98.     Plaintiffs are informed and believe, and based thereon allege, that Defendants Kokorich, Biddy, and the Entity Defendants formed an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).  This enterprise (the "Kokorich-ADU Enterprise") was and is an association in fact enterprise, consisting of Kokorich, Biddy, and the Entity Defendants, who continue to have a stable working relationship and delegation of duties among themselves, as well as a common purpose of defrauding Plaintiffs to enrich themselves.

99.     Plaintiffs are informed and believe, and based thereon allege, that the Kokorich-ADU Enterprise has engaged in, and its activities affect, interstate commerce, including through the Defendants' use of the U.S. mail, electronic mail, and telephone and digital communications across state and country lines, and the misappropriation and subsequent use of the Joint Venture's assets through the aforementioned fraudulent scheme.

100.    Plaintiffs are informed and believe, and based thereon allege, that each of the above-referenced Defendants was and is associated in the Kokorich-ADU Enterprise and has conducted or participated, directly or indirectly, in the management and operation of the affairs of

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18039116.1
230322-10001

18
COMPLAINT

1  the enterprise through a pattern of activity unlawful under 18 U.S.C. § 1961(1) – namely, multiple,

2  repeated, and continuous acts of mail fraud and wire fraud.

3     101.   The Defendants' use of interstate wire facilities and the U.S. mail to perpetrate their

4  fraudulent scheme against Plaintiffs involved multiple electronic mail, wire, and telephonic

5  communications between 2013 through the present, as alleged in paragraphs 20-21, 26, 31-33, 35-

6  47, 50-59, 62, and 71-72.  Some specific examples of predicate acts committed by Defendants

7  Kokorich, Biddy, and the Entity Defendants in furtherance of their fraudulent scheme against

8  Plaintiffs, and in violation of 18 U.S.C. § 1961(1), include, but are not limited to:

9        a.   On March 1, 2013 and March 26, 2013, Kokorich sent Kushaev emails

10 inviting Kushaev to travel to Silicon Valley, and to stay at Kokorich's house in Silicon Valley, so

11 that they could discuss the Joint Venture.

12       b.   On April 26, 2013, Kokorich sent Kushaev an email with a proposed Term

13 Sheet regarding Kushaev's investment into the Joint Venture.

14       c.   On or about September 26, 2013, Kokorich sent Kushaev an email asking

15 Kushaev to invest $10,000,000 into the Joint Venture

16       d.   On or about February 2, 2015, Biddy used the California Secretary of State

17 online electronic filing portal and/or the US mail to file the "Statement and Designation by

18 Foreign Corporation" so as to register Aquila to do business in California.

19       e.   On or about March 13, 2015, Astro Digital, Inc. used the California

20 Secretary of State online electronic filing portal and/or the US mail to file the "Statement and

21 Designation by Foreign Corporation" to register to do business in California.

22       f.   On August 7, 2015, Kokorich sent Kushaev and others the formal notice of

23 the August 10, 2015 extraordinary board meeting (at which the Framework Agreement

24 transferring the Joint Venture assets to Aquila was approved);

25       g.   On information and belief, Kushaev caused the August 10, 2015 board

26 meeting to be transmitted via videoconference and/or teleconference;

27       h.   On or about August 11, 2015, Kokorich emailed the executed version of the

28 Framework Agreement to Biddy, among others;

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18039116.1
230322-10001

19

COMPLAINT

i.     On or about October 20, 2015, Kokorich caused an email to be sent to Kushaev and others (on which Kokorich was copied), refusing to provide Kushaev with the requested information concerning the transfers of the Joint Venture assets to Aquila.

j.     On or about May 17, 2016, Astro Digital US, Inc. filed an Amended Registration with the California Secretary of State, using either California's online electronic filing portal and/or the US mail, to register to do business in California, to facilitate Defendants' use the misappropriated Joint Venture assets in California.

102.    Plaintiffs are informed and believe, and based thereon allege, that the Defendants' fraudulent scheme against Plaintiffs is part of a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and (5).

103.    The above alleged acts of racketeering by Defendants were not isolated.  Rather, these acts of racketeering are related because they had the same or similar purpose, result, participants, victims, and methods of commission.  Further, the Defendants' acts of racketeering have been continuous, starting in 2013 and continuing through the present.

104.    Plaintiffs are informed and believe, and based thereon allege, that Defendants' wrongful conduct set forth above, represents an ongoing RICO enterprise, which projects into the future with a threat of repetition.

105.    As a direct result of Defendants' violations of 18 U.S.C. § 1962(c) described above, Plaintiffs have suffered substantial injury to their business and property, of at least $10 million, the exact amount to be proven at trial, which damages, according to proof, should be trebled pursuant to 18 U.S.C. § 1964(c).

106.    Plaintiffs are also entitled to an award of reasonable attorneys' fees and costs in this matter, pursuant to 18 U.S.C. § 1964(c).

## FIFTH CAUSE OF ACTION

### FOR VIOLATION OF 18 U.S.C. § 1962(d) (RICO Conspiracy)

### (Against Defendants Kokorich, Biddy, the Entity Defendants and DOE Defendants)

107.    Plaintiffs incorporate by reference those allegations set forth in the preceding paragraphs as though set forth fully herein.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18039116.1
230322-10001

20

COMPLAINT

108.    Plaintiffs are informed and believe, and based thereon allege, that in violation of 18 U.S.C. § 1962(d), Defendants Kokorich, Biddy, and the Entity Defendants conspired to violate 18 U.S.C. § 1962(c).  The conspiracy commenced at least as early as 2013 and continues through the present.

109.    Plaintiffs are informed and believe, and based thereon allege, that the object of the conspiracy was to (i) misappropriate Plaintiffs' moneys and the Joint Venture's assets for the Defendants' personal benefit, and (ii) convince Plaintiffs that Defendants did not divert or misappropriate the Plaintiffs' moneys and Joint Venture assets for their own benefit through providing Plaintiffs with false information regarding those transfers.

110.    Plaintiffs are informed and believe, and based thereon allege, that Kokorich, Biddy, and the Entity Defendants each knowingly, willfully, and unlawfully agreed and combined to conduct or participate, directly or indirectly, in the conduct of the affairs and activities of the Kokorich-ADU Enterprise through a pattern of racketeering activity, including acts indictable under 18 U.S.C. §§ 1341 and 1343, in violation of 18 U.S.C. § 1962(c).

111.    Plaintiffs are informed and believe, and based thereon allege, that each Defendant, whether individually or through an entity, objectively manifested, by words or acts, his or her agreement to the commission of the substantive RICO violations by at least one member of the conspiracy, and each Defendant committed at least one overt act in furtherance of the conspiracy.

112.    As a direct result of the violations of 18 U.S.C. § 1962(d) committed by Defendants, herein described, Plaintiffs have suffered substantial injury to their business and property, of at least $10 million, the exact amount to be proven at trial, which damages, according to proof, should be trebled pursuant to 18 U.S.C. § 1964(c).

113.    Plaintiffs are also entitled to an award of reasonable attorneys' fees and costs in this matter, pursuant to 18 U.S.C. § 1964(c).

114.    In so conspiring with each other to commit the RICO violations alleged herein, Defendants, and each of them, are jointly and severally liable for the wrongful actions of each co-conspirator.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18039116.1
230322-10001

21
COMPLAINT

## SIXTH CAUSE OF ACTION

## FOR UNJUST ENRICHMENT

### (Against the Individual Defendants and ADU)

115.    Plaintiffs incorporate by reference those allegations set forth in the preceding paragraphs as though set forth fully herein.

116.    As described above, Plaintiffs have conferred a benefit on Defendants by investing $10 million into the Joint Venture, which Defendants then diverted and misappropriated.

117.    Plaintiffs are informed and believe, and based thereon allege, that each of the Individual Defendants had an ownership interest in ADU, so that they each personally benefited from the transfer of the Joint Venture assets from Canopus to ADU.

118.    ADU also profited from the transfer of the Joint Venture assets from Canopus to ADU because ADU obtained those assets for far below market value, due to the improper actions of Kokorich, who upon information and belief controlled both Canopus and ADU at the time of the wrongful transfers via the Framework Agreement.

119.    Defendants have been unjustly enriched at the expense of Plaintiffs.  Therefore, they must disgorge and make restitution to Plaintiffs for the total amount of Plaintiffs' funds and Joint Venture assets that they diverted and misappropriated from the Joint Venture.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.    For compensatory damages in an amount of least $10 million, the exact amount to be proven at trial.

2.    For consequential and incidental damages, in an amount to be proven at trial.

3.    For punitive and exemplary damages to punish Defendants' willful and malicious conduct, and to deter similar conduct in the future.

4.    For prejudgment and post-judgment interest, at the legal interest rate.

5.    For treble damages, pursuant to 18 U.S.C. § 1964(c).

6.    For reasonable attorneys' fees and costs, pursuant to 18 U.S.C. § 1964(c).

7.    For such other relief as the Court deems just and proper.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18039116.1
230322-10001

22

COMPLAINT

1 | Dated: August 8, 2019

LOEB & LOEB LLP
OLEG (ALEX) STOLYAR
DONALD A. MILLER
JENNIFER JASON

By: _Donald Miller / JJ_____
Donald A. Miller
Attorneys for Plaintiffs Ambercroft Trading
Limited and Dmitri Kushaev

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

1                           **DEMAND FOR JURY TRIAL**

2       Plaintiffs hereby request a trial by jury on any and all claims so triable.

3

4 Dated: August 8, 2019                   LOEB & LOEB LLP

5                                   OLEG (ALEX) STOLYAR
                                  DONALD A. MILLER

6                                   JENNIFER JASON

7                   By: _Donald Miller /JJ_____

8                           Donald A. Miller
                          Attorneys for Plaintiffs Ambercroft Trading

9                           Limited and Dmitri Kushaev

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations     18039116.1
230322-10001                    24
                              COMPLAINT

# EXHIBIT 2

LOEB & LOEB LLP
OLEG (ALEX) STOLYAR (SBN 229265)
astolyar@loeb.com
DONALD A. MILLER (SBN 228753)
dmiller@loeb.com
JENNIFER JASON (SBN 274142)
jjason@loeb.com
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA  90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

Attorneys for Plaintiffs
Ambercroft Trading Limited and
Dmitri Kushaev

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF SANTA CLARA

| | |
|---|---|
| AMBERCROFT TRADING LIMITED, a British Virgin Islands company; AND DMITRI KUSHAEV, an individual<br><br>Plaintiffs,<br><br>v.<br><br>MIKHAIL KOKORICH, an individual; LIUDMILA KOKORICH, an individual; CHRIS BIDDY, an individual; ASTRO DIGITAL US INC. (f/k/a Aquila Space Inc.), a Delaware corporation; ASTRO DIGITAL, INC., a Delaware corporation; AND DOES 1 THROUGH 10, INCLUSIVE<br><br>Defendants. | Case No. 19CV352624<br><br>**STIPULATION FOR EXTENSION OF TIME FOR DEFENDANTS CHRIS BIDDY, ASTRO DIGITAL US INC., AND ASTRO DIGITAL, INC. TO FILE RESPONSIVE PLEADING TO COMPLAINT; [PROPOSED] ORDER**<br><br>Action Filed:  August 8, 2019 |

18186441.1
230322-10002

STIPULATION FOR EXTENSION OF TIME

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

1         Pursuant to Rule 3.110 of the California Rules of Court, this Stipulation between plaintiffs

2   Ambercroft Trading Limited and Dmitri Kushaev ("Plaintiffs"), and defendants Chris Biddy,

3   Astro Digital US Inc., and Astro Digital, Inc., for themselves, and no other defendants, is based on

4   the following grounds:

5         1.     Plaintiffs filed a Complaint on August 8, 2019, against multiple defendant –

6   including Chris Biddy, Astro Digital US Inc. (f/k/a Aquila Space Inc.), and Astro Digital, Inc.

7   (collectively, "Astro Digital" or the "Astro Digital defendants") – for breach of fiduciary duty;

8   fraud; violation of Business and Professions Code §§ 17200, *et seq.*; violation of 18 U.S.C.

9   1962(c) – Civil RICO; violation of 18 U.S.C. 1962(d) – Civil RICO; and unjust enrichment (the

10  "Complaint").

11        2.     Counsel for Plaintiffs and counsel for Astro Digital discussed Plaintiffs' request

12  that counsel for Astro Digital accept service of the Complaint on behalf of the Astro Digital

13  defendants.

14        3.     Counsel for Plaintiffs and counsel for Astro Digital have further discussed a

15  proposed schedule to provide the Astro Digital defendants with additional time for their

16  responsive pleading to the Complaint and other procedural issues, such as possible removal of the

17  Complaint to federal court and a mutually agreeable briefing schedule if Astro Digital file a

18  motion to dismiss the Complaint.

19        4.     As part of these conversations, Plaintiffs and Astro Digital have agree that:

20            a.     Service shall be effectuated on Astro Digital as of Friday, September

21  20, 2019;

22            b.     The last day for the responsive pleading by Astro Digital to the

23  Complaint is November 5, 2019;

24            c.     The parties agree to cooperate with each other regarding briefing and

25  to set mutually convenient hearing dates to accommodate their professional and personal

26  schedules; and

27            d.     The parties may further extend the time to the responsive pleading by

28  Astro Digital to Plaintiffs' Complaint upon further order of this Court.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18186441.1
230322-10002

2

STIPULATION FOR EXTENSION OF TIME

1      5.      If the Court does not approve this Stipulation, the parties agree that Astro Digital

2 will file their responsive pleading within fourteen (14) calendar days of their counsel's receipt of a

3 notice that the Court has not approved the Stipulation.

4      6.      The parties therefore request the Court execute the Proposed Order, as the

5 Stipulation avoids the unnecessary cost and burden of effectuating personal service on Astro

6 Digital, and provides a period of time counsel to coordinate their respective schedules which will

7 alleviate the burden on the Court.

8

9 Dated: September __, 2019           ROPERS MAJESKI KOHN BENTLEY

10                                      TODD A. ROBERTS

11                                  By: _____

12                                      Todd A. Roberts
                                   Attorneys for Defendants Chris Biddy, Astro

13                                    Digital US Inc., and Astro Digital, Inc.

14

15 Dated: September __, 2019           LOEB & LOEB LLP

16                                      OLEG (ALEX) STOLYAR
                                   DONALD A. MILLER

17                                    JENNIFER JASON

18                                  By: _____

19                                    Donald A. Miller
                                   Attorneys for Plaintiffs Ambercroft Trading

20                                    Limited and Dmitri Kushaev

21

22

23

24

25

26

27

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18186441.1
230322-10002

3

STIPULATION FOR EXTENSION OF TIME

**[PROPOSED] ORDER**

Pursuant to the Stipulation of the parties, IS HEREBY ORDERED that:

1.     Astro Digital's responsive pleading to Plaintiffs' Complaint shall be due on or before _____;

2.     The parties may further extend the time for the responsive pleading by Astro Digital to Plaintiffs' Complaint upon further order of this Court.

IT IS SO ORDERED.

Dated: _____       _____

The Honorable Peter H. Kirwan
Judge of the Superior Court

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18186441.1
230322-10002

4

STIPULATION FOR EXTENSION OF TIME

**CASE NAME:**   Ambercroft Trading, et al. v. Mikhail Kokorich, et al.

**ACTION NO.:**

## PROOF OF SERVICE

**METHOD OF SERVICE**

☒ First Class Mail          ☐ Facsimile                    ☐ Messenger Service

☐ Overnight Delivery      ☐ E-Mail/Electronic Delivery

1. At the time of service I was over 18 years of age and not a party to this action and a Citizen of the United States.

2. My business address is 1001 Marshall Street, Suite 500, Redwood City, CA  94063, County of San Mateo.

3. On October 21, 2019 I served the following documents:

**DEFENDANTS CHRIS BIDDY, ASTRO DIGITAL US INC., AND ASTRO DIGITAL, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT PURSUANT TO 28 U.S.C. §§ 1331 AND 1441(a) [FEDERAL QUESTION JURISDICTION] DEMAND FOR JURY TRIAL [Fed. R. Civ. P., Rule 38(a)]**

**CIVIL COVER SHEET**

4. I served the documents on the persons at the address below (along with their fax numbers and/or email addresses if service was by fax or email):

| | |
|---|---|
| Oleg (Alex) Stoylar<br>Donald A. Miller<br>Jennifer Jason<br>LOEB & LOEB LLP<br>10100 Santa Monica Blvd. Suite 2200<br>Los Angeles, CA 90067 | Attorneys for Plaintiffs<br><br>Telephone: 310-282-2000<br>Facsimile: 310-282-2200<br>Email: astolyar@loeb.com<br>dmiller@loeb.com<br>jjason@loeb.com |
| Sharon Z. Weiss<br>Richard C. Ochoa<br>Ashlee C. Difuntorum<br>BRYAN CAVE LEIGHTOIN PAISNER LLP<br>120 Broadway, Suite 300<br>Santa Monica, CA 90401 | Attorneys for Defendant Mikhail<br>Kokorich and Liudmila Kokorich<br><br>Telephone: 310-576-2100<br>Facsimile: 310-576-2200<br>Email: Sharon.weiss@bclplaw.com<br>rcochoa@bclplaw.com<br>ashlee.difuntorum@bclplaw.com |

5. I served the documents by the following means:

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

4816-8183-8506.1

PROOF OF SERVICE

a.  ☒  By United States mail:  I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses specified in item 4 and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with this business's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid at the address listed in Paragraph 2 above.

b.  ☐  By overnight delivery:  I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 4. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

c.  ☐  By messenger:  I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 4 and providing them to a messenger for service.  (Separate declaration of personal service to be provided by the messenger.)

d.  ☐  By fax transmission:  Based on an agreement between the parties and in conformance with Fed. Rules Civ. Proc. rule 5, and/or as a courtesy, I faxed the documents to the persons at the fax numbers listed in item 4.  (Separate Proof of Transmission by Fax to be provided.)

e.  ☐  By email or electronic transmission:  Based on an agreement between the parties and/or as a courtesy, I sent the documents via my electronic service address (bella.wu@rmkb.com) to the persons at the email addresses listed in item 4.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I am employed in the office of a member of the bar of this court at whose direction the service was made.  I certify under penalty of perjury that the foregoing is true and correct.

Date:   October 21, 2019

Bella Wu
Type Name

Signature

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City