1  TODD A. ROBERTS (SBN 129722)
   NICOLE S. HEALY (SBN 157417)
2  EDWIN BARNES (SBN 295454)
   ROPERS, MAJESKI, KOHN & BENTLEY
3  1001 Marshall Street, Suite 500
   Redwood City, CA  94063-2052
4  Telephone:   (650) 364-8200
   Facsimile:   (650) 780-1701
5  Email:      todd.roberts@rmkb.com
               nicole.healy@rmkb.com
6              edwin.barnes@rmkb.com

7  Attorneys for Defendants
   CHRIS BIDDY, ASTRO DIGITAL US INC., and
8  ASTRO DIGITAL, INC.

9                UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11

12  AMBERCROFT TRADING LIMITED, a          CASE NO. 19-cv-06810-LHK
    British Virgin Islands company; and
13  DMITRI KUSHAEV, an individual,          **DEFENDANTS CHRIS BIDDY, ASTRO**
                                            **DIGITAL US, INC., AND ASTRO DIGITAL,**
14               Plaintiff,                 **INC.'S NOTICE OF MOTION AND MOTION**
                                            **TO DISMISS THIRD THROUGH SIXTH**
15               v.                         **CAUSES OF ACTION IN PLAINTIFFS'**
                                            **COMPLAINT FOR BREACH OF FIDUCIARY**
16  MIKHAIL KOKORICH, an individual;        **DUTY; FRAUD; VIOLATION OF BUSINESS**
    LIUDMILA KOKORICH, an individual;       **AND PROFESSIONS CODE §§ 17200, *ET SEQ.*;**
17  CHRIS BIDDY, an individual; ASTRO       **VIOLATION OF 18 U.S.C. 1962(c) – CIVIL**
    DIGITAL US INC. (f/k/a Aquila Space     **RICO; VIOLATION OF 18 U.S.C. 1962(d) –**
18  Inc.), a Delaware corporation; ASTRO    **CIVIL RICO; AND UNJUST ENRICHMENT**
    DIGITAL, INC., a Delaware corporation;  **PURSUANT TO FED. R. CIV. P. 12(b)(6) AND**
19  AND DOES 1 THROUGH 10,                  **9(b); MEMORANDUM OF POINTS AND**
    INCLUSIVE,                              **AUTHORITIES IN SUPPORT THEREOF**
20
                 Defendant.                 **Date:         April 2, 2020**
21                                          **Time:         1:30 p.m.**
                                            **Courtroom:    8**
22                                          **Judge:        Honorable Lucy H. Koh**

23

24

25

26

27

28

*Ropers Majeski Kohn & Bentley*
*A Professional Corporation*
*Redwood City*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 3

II.   BACKGROUND .................................................................................................. 5

    A.    Factual Allegations .................................................................................. 5

    B.    Procedural History ................................................................................... 7

III.  ARGUMENT ....................................................................................................... 8

    A.    Legal Standards ....................................................................................... 8

    B.    Plaintiffs' UCL Claim Must be Dismissed .............................................. 9

    C.    Plaintiffs Have Not Stated a Substantive or Conspiracy Claim Under RICO ...... 12

        1.    Plaintiffs Have Not Pled Facts Demonstrating that the Defendants Formed a RICO "Enterprise" .......... 13

        2.    Plaintiffs Have Not Shown that Biddy or the Astro Digital Entities Committed any Predicate Offenses ........ 15

        3.    A "Pattern of Racketeering Activity" Requires Continuity, Which Plaintiffs have Not Pled .......... 17

        4.    The Astro Digital Entities Cannot Be Liable for RICO Violations Where They Were Alleged to Be Passive Recipients of the Assets Diverted from the JV .......... 19

    D.    Plaintiffs Have Not Pled Facts Supporting their Contention that Biddy and the Astro Digital Entities Participated in a RICO Conspiracy .......... 19

    E.    Plaintiffs' Claim for Unjust Enrichment Must be Dismissed .......... 20

IV.   CONCLUSION ................................................................................................... 20

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Johnson,*
    355 F.3d 1179 (9th Cir. 2004)...................................................................................................8

*Allwaste, Inc. v. Hecht,*
    65 F.3d 1523 (9th Cir. 1995)..............................................................................................18, 19

*In re Anthem, Inc. Data Breach Litigation,*
    162 F. Supp. 3d 953 (N.D. Cal. 2016) ........................................................................8, 9, 11

*Antman v. Uber Technologies, Inc.,*
    Case No. 3:15-cv-01175-LB, 2015 WL 6123054 (N.D. Cal. Oct. 19, 2015) ......................9, 10

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..............................................................................................................8

*Astiana v. Hain Celestial Group, Inc.,*
    783 F.3d 753 (9th Cir. 2015)................................................................................................20

*Baba v. Hewlett-Packard Co.,*
    No. C 09–05946 RS, 2010 WL 2486353 (N.D. Cal. June 16, 2010)...............................9, 10

*Bardin v. Daimlerchrysler Corp.,*
    136 Cal. App. 4th 1255 (2006)............................................................................................10

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..............................................................................................................8

*Camacho v. Auto. Club of Southern California,*
    142 Cal. App. 4th 1394 (2006).............................................................................................10

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.,*
    20 Cal. 4th 163 (1999) ......................................................................................................9, 10

*Davis v. HSBC Bank Nevada, N.A.,*
    691 F.3d 1152 (9th Cir. 2012)...............................................................................................10

*Eclectic Properties East, LLC v. The Marcus & Millichap Co.,*
    No. C-0900511 RMW, 2012 WL 713289 (N. D. Cal. Mar. 5, 2012) ...................17, 18, 19, 20

*Fayer v. Vaughn,*
    649 F.3d 1061 (9th Cir. 2011)................................................................................................8

*H.J., Inc. v. Northwestern Bell Tel. Co.,*
    492 U.S. 229 (1989) ...............................................................................................12, 17, 18

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

*Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago,*
   747 F.2d 384 (7th Cir. 1984)............................................................................................19

*Howard v. America Online Inc.,*
   208 F.3d 741 (9th Cir. 2000)......................................................................................*passim*

*Jordan v. Paul Fin., LLC,*
   745 F. Supp. 2d 1084 (N.D. Cal. 2010) ...........................................................................9

*Kearns v. Ford Motor Co.,*
   567 F.3d 1120 (9th Cir. 2009)........................................................................................11

*Korea Supply Co. v. Lockheed Martin Corp.,*
   29 Cal. 4th 1134 (2003) .................................................................................................9

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.,*
   940 F.2d 397 (9th Cir. 1991)..........................................................................................16

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.,*
   431 F.3d 353 (9th Cir. 2005)..........................................................................................13

*Lozano v. AT&T Wireless Servs., Inc.,*
   504 F.3d 718 (9th Cir. 2007)......................................................................................9, 10

*Miller v. Yokohama Tire Corp.,*
   358 F.3d 616 (9th Cir. 2004)..........................................................................................16

*Mohebbi v. Khazen,*
   50 F. Supp. 3d 1234 (N.D. Cal. 2014) ......................................................................14, 16

*Odom v. Microsoft Corp.,*
   486 F.3d 541 (9th Cir. 2007) (en banc) ...............................................................8, 14, 16

*Petroleos Mexicanos v. Hewlett-Packard Co.,*
   Case No. 14-cv-05292-BLF, 2015 WL 9592606 (N.D. Cal. July 13, 2015) ...........................19

*Religious Technology Center v. Wollersheim,*
   971 F.2d 364 (9th Cir. 1992)......................................................................................18, 19

*Russello v. United States,*
   464 U.S. 16 (1983) ..........................................................................................................12

*Schreiber Distrib. Co. v. ServWell Furniture Co.,*
   806 F.2d 1393 (9th Cir.1986)......................................................................................*passim*

*Sedima, S.P.R.L. v. Imrex Co., Inc.,*
   473 U.S. 479 (1985)....................................................................................................13, 17

*Smith v. Levine Leichtman Capital Partners, Inc.,*
   723 F. Supp. 2d 1205 (N.D. Cal. 2010) ..........................................................................16

*Smith v. State Farm Mut. Auto. Ins. Co.*,
    93 Cal. App. 4th 700 (2001) ..................................................................................10

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ..................................................................................8

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ................................................................................11

*United Brotherhood of Carpenters and Joiners of Am. v. Building and
    Construction Trades Dep't*,
    770 F.3d 834 (9th Cir. 2014) ................................................................................13

*United States v. Cagnina*,
    697 F.2d 915 (11th Cir. 1983) ..............................................................................14

*United States v. Turkette*,
    452 U.S. 576 (1981) .......................................................................................13, 14

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ..............................................................................11

**Statutes**

18 U.S.C. §§ 1341 ..........................................................................................15, 20

18 U.S.C. § 1961(1)(B) .........................................................................................15

18 U.S.C. § 1961(5) ..............................................................................................17

18 U.S.C. § 1962(c) ........................................................................................*passim*

18 U.S.C. § 1962(d) .......................................................................................*passim*

18 U.S.C. § 1964(c) ..............................................................................................17

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ....................................................5, 8, 9

Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §§ 1961-1968 .............................8

**Other Authorities**

Federal Rule of Civil Procedure 9(b) .............................................................*passim*

Federal Rule of Civil Procedure 12(b)(6) .......................................................*passim*

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- iv -

BIDDY & ASTRO DIGITAL'S NOTICE & MOT. TO
DISMISS 3RD-6TH CAUSES OF ACTION; MEMO.
OF PTS & AUTHS.; NO. 19-CV-06810-LHK

**DEFENDANTS CHRIS BIDDY, ASTRO DIGITAL US INC., AND ASTRO DIGITAL, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE THIRD THROUGH SIXTH CAUSES OF ACTION IN PLAINTIFFS' COMPLAINT FOR BREACH OF FIDUCIARY DUTY; FRAUD; VIOLATION OF BUSINESS AND PROFESSIONS CODE §§ 17200, *ET SEQ.*; VIOLATION OF 18 U.S.C. 1962(c) – CIVIL RICO; VIOLATION OF 18 U.S.C. 1962(d) – CIVIL RICO; and UNJUST ENRICHMENT**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 2, 2020, at 1:30 p.m., or as soon thereafter as counsel may be heard, before the Honorable Lucy H. Koh, United States District Court Judge for the Northern District of California, located at San Jose Courthouse, Courtroom 8 - 4th Floor, 280 South 1st Street, San Jose, CA 95113, Defendants Chris Biddy ("Biddy") Astro Digital US, Inc. ("Astro Digital US"), and Astro Digital, Inc. ("Astro Digital," and collectively with Astro Digital US, "Astro Digital") will and hereby do respectfully move the Court for an Order dismissing the Third through the Sixth Causes of Action in Plaintiffs Ambercroft Trading Limited and Dmitri Kushaev's ("Plaintiffs") Complaint for Breach of Fiduciary Duty; Fraud; Violation of Business and Professions Code §§ 17200, *et seq.*; Violation of 18 U.S.C. 1962(c) – Civil Rico; Violation of 18 U.S.C. 1962(d) – Civil Rico; and Unjust Enrichment ("Complaint") pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

Defendants Biddy and Astro Digital ask this Court to dismiss the Third Cause of Action, for violations of California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq.*, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) as to Defendants Biddy, Astro Digital US, and Astro Digital, because Plaintiffs have failed to allege specific facts to support their allegations that these Defendants acted fraudulently and established the Astro Digital entities for the purpose of diverting and misappropriating the Joint Venture assets to Astro Digital US; implemented and entered into the Framework Agreement to divert the Joint Venture to Astro Digital US without adequate consideration; and directly competed against the Joint Venture entities using the assets, intellectual property, and employees of the Joint Venture entities.

Defendants Biddy and Astro Digital ask this Court to dismiss the Fourth and Fifth Causes of Action, for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO")

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

4832-3160-3374.1                                    - 1 -                  BIDDY & ASTRO DIGITAL'S NOTICE & MOT. TO
DISMISS 3RD-6TH CAUSES OF ACTION; MEMO.
OF PTS & AUTHS.; NO. 19-CV-06810-LHK

and RICO conspiracy, pursuant to 18 U.S.C. §§ 1962(c) and (d), respectively, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) because Plaintiffs have not pled specific facts demonstrating that Biddy and Astro Digital, along with Defendant Mikhail Kokorich, formed an association-in-fact enterprise which they conducted through a pattern of racketeering activity, based on alleged predicate acts of mail and wire fraud, or that they conspired to do so, and further because Plaintiffs have failed to plead their allegations of fraud with specificity.

Finally, because Plaintiffs have failed to plead their UCL and RICO claims, Defendants Biddy and Astro Digital US ask this Court to dismiss the Sixth Cause of Action for unjust enrichment for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings and other documents on file in this action, and such other and further evidence and arguments as may hereafter be adduced.

## STATEMENT OF ISSUES TO BE DECIDED

1.  Whether Plaintiff's Third Cause of Action for unlawful, unfair, or fraudulent acts or practices in violation of California Business & Professions Code Section 17200, *et seq.*, should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) as to Defendants Biddy, Astro Digital US, and Astro Digital, where Plaintiffs have failed to plead specific facts to support their allegations that these Defendants acted fraudulently and established the Astro Digital entities for the purpose of diverting and misappropriating the Joint Venture assets to Astro Digital US; implemented and entered into the Framework Agreement to divert the Joint Venture to Astro Digital US without adequate consideration; and directly competed against the Joint Venture entities using the assets, intellectual property, and employees of the Joint Venture entities.

2.  Whether Plaintiff's Fourth Cause of Action for civil RICO, in violation of 18 U.S.C. § 1962(c), should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) as to Defendants Biddy, Astro Digital US, and Astro Digital, where Plaintiffs have failed to plead specific facts demonstrating that these Defendants formed an association-in-fact enterprise and conducted the affairs of the enterprise through a

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

4832-3160-3374.1                                    - 2 -                    BIDDY & ASTRO DIGITAL'S NOTICE & MOT. TO
DISMISS 3RD-6TH CAUSES OF ACTION; MEMO.
OF PTS & AUTHS.; NO. 19-CV-06810-LHK

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

pattern of racketeering activity, based on alleged predicate acts of mail and wire fraud, and further where Plaintiffs failed to plead their allegations of fraud with specificity.

3. Whether Plaintiff's Fifth Cause of Action for civil RICO conspiracy, in violation of 18 U.S.C. § 1962(d), should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) as to Defendants Biddy, Astro Digital US, and Astro Digital, where Plaintiffs have failed to plead specific facts demonstrating that these Defendants conspired to formed an association-in-fact enterprise and to conduct the affairs of the enterprise through a pattern of racketeering activity, based on alleged predicate acts of mail and wire fraud, and further where Plaintiffs failed to plead their allegations of fraud with specificity.

4. Whether Plaintiffs' Sixth Cause of Action for unjust enrichment must be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiffs have failed to state a claim for violations of the UCL and RICO, which allegedly give rise to the unjust enrichment claim, and have failed to plead facts demonstrating that Defendants Biddy, Astro Digital US, and Astro Digital were unjustly enriched.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Plaintiffs are trying to turn a straightforward case of an investment allegedly gone wrong into a tale of racketeering and intrigue.  Plaintiffs allege that Defendant Mikhail Kokorich ("Kokorich") and Plaintiff Dmitri Kushaev ("Kushaev") entered into a joint venture to invest in space-related technology including commercial satellite technology, and that Kushaev formed Plaintiff Ambercroft Trading Limited ("Ambercroft") in 2013 to invest in the joint venture (which the Complaint never names or even clearly identifies).  Over a year later, Kokorich allegedly diverted Plaintiffs' investment to the Defendant Astro Digital companies — Astro Digital, Inc. ("Astro Digital") and Astro Digital US, Inc. ("Astro Digital US"), by supposedly causing them to enter into an agreement (the "Framework Agreement") to transfer the joint venture's assets to Astro Digital.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    Although the Complaint is focused almost entirely on Kokorich's alleged diversion of the

2    JV's assets, Plaintiffs also allege that Defendant Chris Biddy ("Biddy") and the Astro Digital

3    entities participated in this purported scheme.  Yet, the claims against Biddy and the entities are

4    based on nothing more than a few administrative acts, and in the case of the Astro Digital entities,

5    receipt of the allegedly diverted assets — none of which supports a claim for racketeering and

6    fraud.  Plaintiffs contend that Biddy, an executive at Aquila Space (later renamed Astro Digital

7    US), filed corporate documents with the Secretary of State, exchanged an emailed copy of the

8    Framework Agreement with Kokorich, and held an ownership interest in Astro Digital US —

9    although Plaintiffs pointedly do not supply the percentage of his ownership.  Notwithstanding this

10   limited involvement, Plaintiffs contend that Biddy and the Astro Digital entities violated

11   California's Unfair Competition Law ("UCL") as well as the Racketeer Influenced and Corrupt

12   Organizations Act ("RICO") and were "unjustly enriched."  Yet, despite alleging that Biddy and

13   Astro Digital acted fraudulently, Plaintiffs fail to plead facts, much less specific facts, to support

14   those allegations.  The Complaint does not supply details regarding the "who, what, when, where,

15   and how" necessary to plead a claim against Biddy or Astro Digital based on any allegedly

16   fraudulent acts in violation of the UCL and RICO.  Accordingly, Federal Rules of Civil Procedure

17   9(b) and 12(b)(6) require dismissal of these claims.

18   The RICO claim is further deficient where it fails to plead the structure of the alleged

19   enterprise; fails to plead facts demonstrating that Biddy or the Astro Digital entities committed

20   predicate acts of mail or wire fraud; and fails to demonstrate that the purported pattern of

21   racketeering activity was sufficiently continuous where the alleged diversion of Plaintiffs'

22   investment occurred in less than a one-year period and Astro Digital could not have competed

23   with the JV after the operating entity closed its doors.  Finally, because Plaintiffs have not pled

24   the UCL or RICO claims, the unjust enrichment claim fails and, like the UCL and RICO claims

25   must also be dismissed as to Biddy and Astro Digital.

26

27

28

BIDDY & ASTRO DIGITAL'S NOTICE & MOT. TO
DISMISS 3RD-6TH CAUSES OF ACTION; MEMO.
OF PTS & AUTHS.; NO. 19-CV-06810-LHK

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  | II.    **BACKGROUND**
2  |        A.    **Factual Allegations**
3  | Plaintiffs Ambercroft and Kushaev (collectively, "Plaintiffs") have brought a six count
4  | Complaint against Kokorich; his wife, Liudmila Kokorich; Biddy; Astro Digital US (formerly
5  | Aquila Space); and Astro Digital, Inc. (the companies are collectively referred to as "Astro
6  | Digital").  ECF No. 1.  Plaintiffs assert four claims against Biddy and the Astro Digital entities —
7  | for violation of the UCL, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; civil RICO violations and
8  | conspiracy to violate RICO, 18 U.S.C. §§ 1962(c) & (d), respectively; and unjust enrichment.
9  | The Complaint alleges, in essence, that Kokorich entered into an unnamed and only
10 | vaguely identified joint venture (the "JV") with Plaintiffs but diverted the JV's assets to Astro
11 | Digital which he allegedly controlled.  According to the Complaint, in 2013, Kokorich solicited a
12 | $10 million investment from Kushaev.  Comp. ¶¶ 19-20.  Kushaev agreed to invest $10 million,
13 | and Kokorich would raise an additional $10 million.  Both would form companies through which
14 | they would own shares or interests in the JV.  Kushaev would own 15%; Kokorich would hold
15 | the controlling interest, serve as CEO of the holding company, and conduct the U.S. operations.
16 | Kushaev would be appointed to executive positions in the various companies to monitor his
17 | investment.  The parties would share any profits *pro rata*. *Id.* ¶¶ 21(a)-(e).
18 | Kushaev formed Ambercroft in 2013 to invest in the JV, which it did in September 2013.
19 | *Id.* ¶ 23.  Also in September 2013, Kokorich formed Dauria Holding International Ltd. ("DHIL"),
20 | "so that Kushaev (through Ambercroft) could hold 14.29% interest." *Id.* ¶ 24.  In turn, DHIL
21 | owned Dauria Aerospace Holding Ltd. ("DASH"). *Id.* ¶ 25.
22 | Plaintiffs contend that Kokorich diverted their investment funds to an indirectly-owned
23 | subsidiary of DASH – Canopus Systems US LLC ("Canopus").  According to the Complaint,
24 | DASH owned Astra Digital, LLC ("Astra"), which owned Canopus.[1] *Id.* ¶ 26.
25 |
26 |
27 |
28 | [1] Plaintiff notes the likeness between the "Astra Digital," initially, Canopus's corporate parent and "Astro Digital" and suggests that this is not a coincidence. *See id.* ¶ 43.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   The Complaint further alleges that Canopus held the JV's most valuable assets: DASH's

2   two Perseus-M satellites.  Canopus also employed DASH's key personnel, and held the rights to

3   the JV's space technology intellectual property.  *Id.* ¶ 27.

4   Beginning in 2014, Kokorich allegedly terminated Kushaev as managing director of

5   finance strategy and mergers and acquisitions for DASH and its subsidiaries, terminated other

6   personnel, and diverted the JV's assets.  *Id.* ¶¶ 31-33.  Sometime in late 2014, Kokorich allegedly

7   asked Plaintiffs to invest additional funds in the JV, but they refused.  *Id.* ¶ 34.

8   Thereafter, between December 2014 and March 2015, Kokorich allegedly formed several

9   other companies, with Biddy's assistance.  The Complaint contends that they formed Astro

10  Digital (which later became Dauria Geo), and Aquila Space, Inc. ("Aquila"), which later merged

11  with Astro Digital to become Astro Digital US.  *Id.* ¶¶ 35-49.  Biddy had allegedly been an

12  executive at Canopus and began working for Aquila Space once it was formed.  *Id.* ¶ 37.  Aquila

13  was allegedly in the same business as Canopus — designing, building, and operating

14  nanosatellites, and providing "daily multispectral satellite imagery through their landmapper

15  constellations."  *Id.* ¶ 40.

16  Plaintiffs contend that Kokorich created the Astro Digital entities to compete with the JV,

17  and named the entities in ways that confused them with companies in the original corporate

18  structure of the JV.  *See id.* ¶¶ 43-45.  Plaintiffs further contend that Kokorich created the Astro

19  Digital entities to divert the JV's assets and that he diverted those assets, which were held by

20  Canopus, to the Astro Digital entities.  *Id.* ¶¶ 49-63.

21  Among other things, beginning in March 2015, Kokorich allegedly attempted to have

22  DASH's board of directors approve the purchase of products from Aquila.  *Id.* ¶ 50.  He then

23  allegedly removed the personnel who had been responsible for financial oversight of the JV (*id.* ¶

24  51), and on March 6, 2015, caused Canopus to enter into a "Subcontractor Agreement" with

25  Aquila by which Canopus transferred its intellectual property and two Perseus-M satellites,

26  allegedly worth over $5 million, to Aquila and allegedly in return for $2 million.  *Id.* ¶ 52.

27  Plaintiffs further contend that Kokorich arranged for Canopus and Aquila Space to enter

28  into a "Joint Development and Cooperation Agreement" dated April 6, 2015 by which Aquila

obtained "substantially all" of Canopus's intellectual property. *Id.* ¶ 54.  Allegedly, after a third party investor complained, Kokorich changed his approach and asked DASH's board of directors to approve a "Framework Agreement," by which the Subcontractor Agreement and Cooperation Agreement would both become void, and the JV's assets would be transferred to Aquila.  Despite having received notice, Plaintiffs did not attend that board meeting. *Id.* ¶¶ 55-57.  After receiving board approval, Kokorich allegedly caused DASH and Canopus to enter into the "Framework Agreement." *Id.* ¶¶ 57-58.  Allegedly, Kokorich and Biddy, who was then an Aquila employee, exchanged copies of the Framework Agreement on or about August 11-12, 2015. *Id.* ¶¶ 57-58.

Despite the approval of DASH's Board, Plaintiffs contend that the Framework Agreement had no legitimate business purpose. *Id.* ¶ 61.  They allege that Kokorich pretended that the agreement was the product of competitive bidding and that he supported that claim by sending emails to unnamed persons with allegedly sham bids from various companies. *Id.* ¶¶ 62-63.

Further, the Complaint alleges that after Canopus's "key assets" were supposedly diverted to Astro Digital by means of the Framework Agreement, the "Individual Defendants caused [Astro Digital US] to go into competition with the Joint Venture, using DASH's and Canopus's tangible assets, intellectual property, and goodwill as if they belonged to [Astro Digital US]." *Id.* ¶ 64.  In support of their claim, Plaintiffs allege that Astro Digital US's product specs resemble Canopus's, and former Canopus employees work for Astro Digital US. *Id.* ¶¶ 65-67.

Years later, in 2018, Plaintiffs allegedly discovered that Kokorich and his wife, Liudmila Kokorich, held an ownership interest in Astro Digital US, which Kokorich had allegedly denied in 2015-16. *Id.* ¶¶ 69, 71-72, 74.  Plaintiffs also supposedly discovered in 2018 that Biddy held an ownership interest in Astro Digital US.  Allegedly that he and the Kokoriches "personally profited from the transfer of Canopus assets [to Astro Digital US] below market." *Id.* ¶¶ 74-75.

**B.   Procedural History**

On August 8, 2019, Plaintiffs filed their Complaint in the Superior Court for Santa Clara County.  On October 21, 2019, Defendants removed the Complaint to this Court on the basis of federal question jurisdiction.  ECF No. 1.  Thereafter, the parties stipulated to a briefing schedule. ECF Nos. 10, 12.  This Motion and Memorandum are filed pursuant to that schedule.

III.   **ARGUMENT**

A.   **Legal Standards**

A motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) must be granted unless the plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Twombly*, 550 U.S. at 556). However, the court "is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *In re Anthem, Inc. Data Breach Litigation*, 162 F. Supp. 3d 953, 969 (N.D. Cal. 2016) (*citing Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011)) (further citations omitted). Rather, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (*citing Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

In addition to meeting the general federal pleading requirements, where plaintiffs plead fraud, they must satisfy the particularity requirements of Rule 9(b) which provides that: "[i]n all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." *Ibid.*

Here, Plaintiffs allege that Defendants violated the "fraudulent" prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* and the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. §§ 1961-1968 based on predicate acts of mail and wire fraud. *See* Comp. ¶¶ 90-92, 96, 99. To plead fraud, Rule 9(b) "requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (*en banc*) (*quoting Schreiber Distrib. Co. v. ServWell Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir.1986)). "[T]he pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Odom*, 486 F.3d

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    at 1400 (*citing Schreiber*, 806 F.2d at 1401). As discussed below, because Plaintiffs have not

2    pled fraud with particularity, their UCL and RICO claims against Biddy and the Astro Digital

3    entities must be dismissed.

**B.      Plaintiffs' UCL Claim Must be Dismissed**

5        California's UCL "provides a cause of action for business practices that are (1) unlawful,

6    (2) unfair, or (3) fraudulent." *Anthem Data Breach*, 162 F. Supp. 3d at 984 (citing Cal. Bus. &

7    Prof. Code §§ 17200, *et seq.*). "Each prong of the UCL provides a separate and distinct theory of

8    liability." *Id.* at 984 (*citing Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir.

9    2007)).

10        The "unlawful" prong of the UCL prohibits "anything that can properly be called a

11   business practice and that at the same time is forbidden by law." *Cel-Tech Communications, Inc.*

12   *v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Further it "'incorporates other laws

13   to make them actionable.'" *Antman v. Uber Technologies, Inc.*, Case No. 3:15-cv-01175-LB,

14   2015 WL 6123054, *6 (N.D. Cal. Oct. 19, 2015) (*citing Jordan v. Paul Fin., LLC*, 745 F. Supp.

15   2d 1084, 1098 (N.D. Cal. 2010)). To plead a UCL claim under the "unlawful" prong, the

16   complaint "must identify the particular section of the statute that was violated, and must describe

17   with reasonable particularity the facts supporting the violation." *Baba v. Hewlett-Packard Co.*,

18   No. C 09-05946 RS, 2010 WL 2486353, *6 (N.D. Cal. June 16, 2010) (internal quotation marks

19   omitted). Here, Plaintiffs have not alleged that Defendants violated any statute on which the UCL

20   claim is premised. *See* Comp. ¶¶ 89-94.

21        The "'unfair' prong of the UCL creates a cause of action for a business practice that is

22   unfair even if not proscribed by some other law." *Adobe*, 66 F. Supp. 3d at 1225 (*citing Korea*

23   *Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003)). Although the California

24   courts have not entirely settled on a definition of "unfair" acts, particularly where the case does

25   not involve consumers or competitors, and at least three tests exist (*see Adobe*, 66 F. Supp. 3d at

26   1226; *Anthem Data Breach*, 152 F. Supp. 3d at 989-90 discussing the "balancing," "tethering,"

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    and "FTC tests"),[2] all require plaintiffs to allege some act by each defendant that violated the

2    UCL.  Plaintiffs have not alleged that the Defendants' conduct was unfair pursuant to any of these

3    tests.

4          Finally, "[t]o state a claim under the 'fraud' prong of § 17200, a plaintiff must allege facts

5    showing that members of the public are likely to be deceived by the alleged fraudulent business

6    practice." *Antman*, 2015 WL 6123054, at *6; *see also Baba*, 2010 WL 2486353, at *7.  As

7    discussed below, Plaintiffs have not pled fraud against Biddy or the entities.

8          Despite these deficiencies, Plaintiffs assert that the Defendants collectively violated all

9    three prongs of the UCL, that is, that their actions were unlawful, unfair, and fraudulent.  Comp.

10   ¶¶ 90-91.  Allegedly, Defendants collectively violated the UCL by:

11        a.  establishing the Astro Digital Entities for the purpose of diverting and
             misappropriating the Joint Venture assets from the Joint Venture entities to [Astro
12           Digital US];

13        b.  implementing and entering into the Framework Agreement to divert the Joint Venture
             assets from the Joint Venture entities to [Astro Digital US] without adequate
14           consideration;

15        c.  directly competing against the Joint Venture entities using the assets, intellectual
             property, and employees of the Joint Venture entities.
16

17   _____

18   [2] *Ibid.* (*citing Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) (balancing
     test requires courts to "weigh the utility of the defendant's conduct against the gravity of the harm
19   to the alleged victim."); *Lozano*, 504 F.3d at 735 (tethering test: "unfairness must be tethered to
     some legislatively declared policy or proof of some actual or threatened impact on competition.");
     and *Camacho v. Auto. Club of Southern California*, 142 Cal. App. 4th 1394, 1404-05 (2006)
20   [adopting FTC test: "(1) the consumer injury must be substantial; (2) the injury must not be
     outweighed by any countervailing benefits to consumers or competition; and (3) it must be an
21   injury that consumers themselves could not reasonably have avoided."]).  In yet another test,
     courts will consider whether the conduct is "immoral, unethical, oppressive, unscrupulous, or
22   substantially injurious to consumers" and therefore "requires the court to weigh the utility of the
     defendant's conduct against the gravity of the harm to the alleged victim."  *Bardin v.*
23   *Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1260 (2006) (*citing Smith v. State Farm Mut.*
     *Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718-19 (2001)).

24   Finally, in UCL cases involving competitors, the California Supreme Court adopted the following
25   test:

          When a plaintiff who claims to have suffered injury from a direct competitor's
26        'unfair' act or practice invokes section 17200, the word 'unfair' in that section means
          conduct that threatens an incipient violation of an antitrust law, or violates the policy
27        or spirit of one of those laws because its effects are comparable to or the same as a
          violation of the law, or otherwise significantly threatens or harms competition.
28   *Cel-Tech*, 20 Cal. 4th at 187.

*Id.* ¶ 91.

Because Plaintiffs do not make any distinction between the allegedly unlawful, unfair or fraudulent acts, they were required to plead the entire UCL claim with specificity. Fed. R. Civ. P. 9(b); *Anthem Data Breach*, 162 F. Supp. 3d at 990 ("Claims stated under the fraud prong of the UCL are subject to the particularity requirements of Federal Rule of Civil Procedure 9(b)) (*citing Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)). To plead a UCL claim based on fraud, "[p]laintiffs must include 'an account of the time, place, and specific content of the false representations' at issue." *Anthem Data Breach*, 162 F. Supp. 3d at 990 (*citing Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks omitted in original)). That is, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

Here, the Complaint wholly fails to do so. Plaintiffs do not plead any facts distinguishing that actions of each Defendant in allegedly establishing Astro Digital, diverting the JV's assets to the Astro Digital entities by means of the Framework Agreement, or thereafter competing with the JV. Although the Complaint alleges that after the Framework Agreement was executed, the "Individual Defendants caused [Astro Digital US] to go into competition with the Joint Venture, using DASH's and Canopus's tangible assets, intellectual property, and goodwill as if they belonged to [Astro Digital US] (Comp. ¶ 64), they offer no facts to back up those allegations. Alleging that the "individual defendants" collectively diverted the JV's assets and caused Astro Digital to compete with the JV is not sufficient. "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but "require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz*, 476 F.3d at 764-65.

Plaintiffs' allegations are not so detailed. The Complaint offers no facts regarding the Astro Digital entities' alleged role in diverting the JV's assets or competing with it. To the contrary, the entity defendants appear entirely passive throughout the Complaint. *See, e.g.*, Comp. ¶¶ 57-58 (Astro Digital's alleged involvement with the Framework Agreement was to

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    receive the JV's assets).  Moreover, not only are the Astro Digital entities not alleged to have

2    established themselves (and how could they?), they are not alleged to have developed the

3    Framework Agreement.  Accordingly, paragraphs 91(a) & (b) do not support a UCL claim against

4    the entity defendants.  And, paragraph 91(c) is logically inconsistent; the entities could not have

5    competed with the JV after supposedly receiving its assets because Canopus (which held the

6    assets) is alleged to have ceased doing business shortly thereafter.  *Id.* ¶¶ 51, 68.

7          Likewise, Plaintiffs do not plead facts showing that Biddy engaged in any fraudulent acts.

8    For example, Plaintiffs do not allege that Biddy's role in forming Aquila or submitting corporate

9    filings to the Secretary of State were fraudulent (*see id.* ¶¶ 91(a), 36, 38), nor indeed anything

10   other than administrative.  Significantly, the Complaint does not plead any facts demonstrating

11   that Biddy undertook these actions to carry out a fraud against Plaintiffs.  Nor do Plaintiffs

12   explain how Biddy allegedly "implement[ed] and enter[ed] into the Framework Agreement."  *Id.*

13   ¶ 91(b).  Rather, undercutting Plaintiffs' allegations against Biddy, the Complaint alleges that

14   Kokorich "caused DASH and Canopus to enter into the so-called 'Framework Agreement' with

15   Aquila, effective August 11, 2015, pursuant to which Kokorich caused DASH and Canopus to

16   sell the Joint Venture assets to Aquila at far below market value."  *Id.* ¶ 58.  Biddy's only alleged

17   involvement with the Framework Agreement was to exchange the final draft with Kokorich,

18   while Biddy was allegedly an Aquila employee.  *See id.* ¶¶ 59-60.  Yet, merely executing an

19   agreement which the Complaint neither attaches nor quotes does not state a claim under the

20   "fraud" prong of the UCL.

21         Because Plaintiffs have not stated a claim under the UCL, the Third Cause of Action must

22   be dismissed against Biddy, Astro Digital, and Astro Digital US.

23   **C.    Plaintiffs Have Not Stated a Substantive or Conspiracy Claim Under RICO**

24         Plaintiffs have brought civil claims for substantive and conspiracy violations of RICO,

25   U.S.C. §§ 1962(c), (d).  *See* Comp. ¶¶ 95-114.  Although since expanded, RICO was designed to

26   target serious instances of the corrupt takeover of organizations.[3]  Yet, Plaintiffs are attempting to

27

28   [3] *See, e.g., H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 245 (1989) ("Organized crime
     was without a doubt Congress' major target, as we have recognized elsewhere."); *Russello v.*

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  apply these statutes to garden variety allegations of fraud and breach of fiduciary duty — none of

2  which is aimed at Biddy or the Astro Digital entities.  Instead, Biddy is barely mentioned and is

3  not alleged to have developed or implemented any scheme to defraud Plaintiffs.  His supposed

4  role was essentially ministerial and administrative, and wholly limited in scope.  Likewise, Astro

5  Digital is alleged to have been the passive recipient of the assets purportedly diverted from the

6  JV.  Altogether, it seems that Plaintiffs have named Biddy and Astro Digital solely to be able to

7  allege that they formed an "enterprise" with Kokorich.

8      It is unlawful under Section 1962(c), "for any person employed by or associated with any

9  enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct

10 or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

11 racketeering activity . . . ."  Likewise, it is a violation of federal law for "any person to conspire to

12 violate" the substantive provisions of Section 1962.  18 U.S.C. § 1962(d).

13     The well-established "elements of a civil RICO claim are as follows: (1) conduct (2) of an

14 enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing

15 injury to plaintiff's business or property.'"  *United Brotherhood of Carpenters and Joiners of Am.*

16 *v. Building and Construction Trades Dep't*, 770 F.3d 834, 837 (9th Cir. 2014) (*citing Living*

17 *Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005)); *see also*

18 *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).  As discussed below, Plaintiffs'

19 Complaint does not plead these elements, and does not plead the predicate offenses of mail and

20 wire fraud with specificity.

21     **1.  Plaintiffs Have Not Pled Facts Demonstrating that the Defendants Formed a RICO "Enterprise"**

22

23     Where the complaint alleges that the enterprise is an association-in-fact, the plaintiff must

24 plead facts identifying the "enterprise" and the "pattern of racketeering activity."  An "enterprise

25 is an entity . . . a group of persons associated together for a common purpose of engaging in a

26 course of conduct."  *United States v. Turkette*, 452 U.S. 576, 583 (1981).  The "pattern of

27 *United States*, 464 U.S. 16, 25-26 (1983) (". . . Congress viewed the RICO statute in large part as
28 a response to organized crime's infiltration of legitimate enterprises.") (*citing United States v. Turkette*, 452 U.S. 576, 591 (1981)).

1    racketeering activity is, on the other hand, a series of criminal acts as defined by the statute."

2    *Ibid.* "The former is proved by evidence of an ongoing organization, formal or informal, and by

3    evidence that the various associates function as a continuing unit. The latter is proved by

4    evidence of the requisite number of acts of racketeering committed by the participants in the

5    enterprise." *Ibid.*; *see also Odom*, 486 F.3d at 549, 552-53.

6         The Ninth Circuit has held that "an associated-in-fact enterprise under RICO does not

7    require any particular organizational structure, separate or otherwise." *Odom*, 486 F.3d at 551;

8    *see also Mohebbi v. Khazen*, 50 F. Supp. 3d 1234, 1254 (N.D. Cal. 2014). However, even an

9    informal association must have an "ongoing organization" which serves as "'a vehicle for the

10   commission of two or more predicate crimes.'" *Odom*, 486 F.3d at 551 (*citing United States v.*

11   *Cagnina*, 697 F.2d 915, 921-22 (11th Cir. 1983)).

12        Here, Plaintiffs have alleged that the enterprise "was and is an association in fact

13   enterprise, consisting of Kokorich, Biddy, and the Entity Defendants, who continue to have a

14   stable working relationship and delegation of duties among themselves, as well as a common

15   purpose of defrauding Plaintiffs to enrich themselves." Comp. ¶ 98. While alleging that these

16   Defendants formed an "enterprise," the Complaint lacks details concerning its purported structure

17   and organization. However, the "failure to plead facts identifying the structure of the enterprise

18   requires dismissal." *Mohebbi*, 50 F. Supp. 3d at 1254.

19        Here, the Complaint focuses almost entirely on Kokorich who allegedly solicited

20   Plaintiffs' investment in the JV and then purportedly diverted the JV's assets to the Astro Digital

21   entities. Biddy appears in the Complaint only rarely; indeed his name is mentioned in the "factual

22   allegations" only nine times. *See* Comp. ¶¶ 35-38, 47, 59-60, 75. Moreover, much of the action

23   allegedly occurred before Biddy came on the scene or the Astro Digital entities even existed.

24   Kokorich allegedly solicited Kushaev's investment in 2013, yet Aquila was only formed in

25   December 2014 and registered to do business in California in February 2015, and Astro Digital,

26   Inc. was formed and registered to do business in California in March 2015. *See* Comp. ¶¶ 36, 41,

27   101(a)-(e). Despite that, Plaintiffs have not explained how Biddy and the Astro Digital entities

28   could have become an "association in fact" with Kokorich with the "common purpose of

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

defrauding Plaintiffs to enrich themselves" (Comp. ¶ 98) years before Biddy is first mentioned or the entities began operations.  Indeed, Biddy first appears regarding the formation of Aquila in December 2014 (*id.* ¶ 36), yet Kushaev had already invested in the JV through Ambercroft fifteen months earlier, in September 2013.  *Id.* ¶ 23.  Likewise, Plaintiffs allege that Kokorich misappropriated Plaintiffs' funds and began efforts to divert the JV's assets beginning in May 2014 – months before Biddy appears in the Complaint or the Astro Digital entities were formed.  *See id.* ¶¶ 30-34.

Nowhere do Plaintiffs offer any facts as to why Biddy allegedly joined any ongoing scheme to defraud Plaintiffs.  While he allegedly has an unspecified ownership interest in Astro Digital US, that company was formed only in May 2016.  *Id.* ¶¶ 46-47.  It is not plausible that Biddy would join an illegal enterprise in February 2015, and only obtain a financial interest in the alleged scheme over fifteen months later.  And, indeed, the Complaint makes no effort to tell a coherent story where Biddy is concerned.  Accordingly, the allegations that Biddy was a member of an associated-in-fact enterprise lacks support within the Complaint.

The same is true for Astro Digital.  Aquila, later Astro Digital US, was formed in December 2014 (Comp. ¶ 36), and Astro Digital, Inc. was formed in March 2015 (*id.* ¶ 41), and neither is alleged to have joined an "enterprise" before they were formed (and indeed, that would seem to be impossible).  Moreover, like the allegations against Biddy, the Complaint does not allege that the companies took affirmative acts, including to "conduct" the enterprise's activities.  The only affirmative acts by the companies are allegedly Aquila's stock-for-stock exchange with Astro Digital to become Astro Digital US, and that company's filing a certificate of amendment with the California Secretary of State.  *Id.* ¶¶ 46-47.  Neither act demonstrates that either entity Defendant joined a RICO enterprise.

**2.      Plaintiffs Have Not Shown that Biddy or the Astro Digital Entities Committed any Predicate Offenses**

Plaintiffs' allege that the Defendants committed the predicate offenses of mail and wire fraud.  *See* Comp. ¶ 101; 18 U.S.C. § 1961(1)(B).  To plead a violation of mail or wire fraud under 18 U.S.C. §§ 1341 or 1343, "it is necessary to show that (1) the defendants formed a

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004) (*quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986)); *see also Smith v. Levine Leichtman Capital Partners, Inc.*, 723 F. Supp. 2d 1205, 1215 (N.D. Cal. 2010). While the first and third elements, which require proof of the defendants' intent, may be pled generally, the second element requires particularized allegations of the "factual circumstances of the fraud itself." *Odom*, 486 F.3d at 554; *see also* Fed. R. Civ. P. 9(b).

Despite their allegations, Plaintiffs do not plead any facts demonstrating that Biddy or the Astro Digital entities made false or misleading statements or omissions, or otherwise engaged in fraudulent conduct. To the contrary, the Complaint lacks any factual allegations regarding Biddy or Astro Digital's role in devising, executing, or otherwise participating in any fraud scheme. Yet, to state a fraud claim, a plaintiff must plead specific facts concerning the alleged role of each defendant in the purported fraud. "In this Circuit, a plaintiff seeking to plead a RICO claim based on a predicate act of fraud must comply with the pleading requirements for fraud under Rule 9(b), which demands plaintiff pleads 'with particularity the time, place, and manner of each act of fraud, *plus the role of each defendant in each scheme.*'" *Mohebbi*, 50 F. Supp. 3d at 1253 (*citing Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991)) (emphasis added by the Court). Yet, Plaintiffs allege that only Biddy and the Astro Digital entities performed essentially administrative functions. *See* Comp. ¶¶ 101(d), (e), (h), (j). These allegations do not state a claim for mail or wire fraud.

A "predicate act" must be an indictable offense. "Citing acts as a part of a RICO pattern, without proving that they are indictable, is not sufficient." *Howard*, 208 F.3d at 748. Here, Plaintiffs do not allege that Biddy or the companies directed the supposed diversion of the JV's assets or made misrepresentations or omissions to Plaintiffs or otherwise committed any fraudulent acts constituting mail or wire fraud. Instead, the Complaint alleges that they engaged in various ministerial acts such as registering the Astro Digital companies with the Secretary of State or receiving a copy of the Framework Agreement. Comp. ¶¶ 36, 38, 47, 59, 101(d), (h).

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    Plaintiffs do not plead facts demonstrating that Biddy took these innocuous administrative actions

2    as part of a scheme or artifice to defraud Plaintiffs.  The same is true for the entity defendants.

3    *See id.* ¶¶ 47, 101(e), (j).  Accordingly, Plaintiffs have not pled mail or wire fraud against Biddy

4    and the Astro Digital entities.

5            Finally, Plaintiffs cannot recover damages where they have not alleged predicate acts

6    against Biddy and Astro Digital.  A private plaintiff may only recover damages if they prove that

7    they suffered an injury "by reason of a violation of" of Section 1962's substantive provisions.

8    *See* 18 U.S.C. § 1964(c).  The injury must flow from the predicate offenses.  That is, "[w]here the

9    plaintiff alleges each element of the violation, the compensable injury necessarily is the harm

10   caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation

11   is the commission of those acts in connection with the conduct of an enterprise." *Sedima*, 473

12   U.S. at 497.  Because Plaintiffs have not shown that the acts ascribed to Biddy and the Astro

13   Digital entities were predicate offenses, and that these actions caused Plaintiffs alleged injuries,

14   they have not pled damages as to these Defendants.

15           **3.     A "Pattern of Racketeering Activity" Requires Continuity, Which**
                       **Plaintiffs have Not Pled**
16

17           A "'pattern of racketeering activity' requires at least two acts of racketeering activity."  18

18   U.S.C. § 1961(5).  However, "while two acts are necessary, they may not be sufficient."  *Sedima*,

19   473 U.S. at 496 n.14; *Howard v. America Online Inc.*, 208 F.3d 741, 746 (9th Cir. 2000).

20   Further, "[t]he pattern requirement must be satisfied *as to each defendant individually*." *Eclectic*

21   *Properties East, LLC v. The Marcus & Millichap Co.*, No. C-0900511 RMW, 2012 WL 713289,

22   at *9 (N. D. Cal. Mar. 5, 2012) (emphasis added).  Here, Plaintiffs have neither pled that Biddy or

23   the Astro Digital entities committed any predicate acts (as discussed above), nor have they

24   alleged the pattern element against these Defendants.

25           To satisfy the pattern element, the activity must involve a "threat of continuing activity."

26   *Sedima*, 473 U.S. 496 n.14; *Schreiber*, 806 F.2d at 1399; *see also H.J., Inc. v. Northwestern Bell*

27   *Tel. Co.*, 492 U.S. 229, 239 (1989) ("the term 'pattern' itself requires the showing of a

28   relationship between the predicates and of the threat of continuing activity.") (internal citation

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    and quotation marks omitted).  As the Ninth Circuit has explained, the "Supreme Court has held

2    that continuity can be demonstrated by proving either 'a series of related predicates extending

3    over a substantial period of time' or 'past conduct that by its nature projects into the future with a

4    threat of repetition.'"  *Religious Technology Center v. Wollersheim*, 971 F.2d 364, 366 (9th Cir.

5    1992) (*quoting H.J., Inc.*, 492 U.S. at 241-42).

6            Continuity is essential to demonstrating a pattern of racketeering activity.  "To prevail

7    under RICO, plaintiffs must establish that the predicate acts were continuous.  This can be done

8    either by pleading 'closed-ended continuity' or by pleading 'open-ended continuity.'"  *Allwaste,*

9    *Inc. v. Hecht*, 65 F.3d 1523, 1526 (9th Cir. 1995).  "Closed-ended continuity refers to a closed

10   period of repeated conduct.  It is established by showing that the predicate acts occurred over a

11   substantial period of time."  *Ibid.*  "Open-ended continuity refers to past conduct that by its nature

12   indicates a threat of future criminal conduct.  It is established by showing either that the predicate

13   acts specifically threaten repetition or that they were an ongoing entity's regular way of doing

14   business."  *Ibid.*

15           To plead closed-ended continuity, the plaintiff must allege facts demonstrating that the

16   racketeering activity continued for a sufficiently long period.  "Although the Ninth Circuit has

17   rejected a bright line, one-year rule for establishing continuity [citation] courts have rarely if ever

18   found activity lasting less than a year sufficient."  *Eclectic Properties*, 2012 WL 713289, at *10

19   (*citing Allwaste*, 65 F.3d at 1528); *Religious Technology Center*, 971 F.2d at 366-67 ("We have

20   found no case in which a court has held the requirement to be satisfied by a pattern of activity

21   lasting less than a year."); *Howard*, 208 F.3d at 750-51.  That is, "[a] pattern of activity lasting

22   only a few months does not reflect the 'long term criminal conduct' to which RICO was intended

23   to apply."  *Religious Technology Center*, 971 F.2d at 367 (*quoting H.J., Inc.*, 492 U.S. at 242).

24           The allegations here do not plead a closed-ended pattern of activity.  Biddy is not alleged

25   to have been involved in the supposed scheme to divert the JV's assets until, at the earliest,

26   December 2014, with the formation of Aquila.  *See* Comp. ¶ 36.  Astro Digital was allegedly

27   formed in March 2015 (*id.* ¶ 41), and Astro Digital US was formed in December 2015.  *Id.* ¶ 46.

28   Yet, the alleged diversion of the JV's assets was complete as of approximately August 2015 with

the execution of the Framework Agreement.  *See* Comp. ¶¶ 36, 50, 64.  Accordingly, not only is the alleged pattern insufficiently lengthy for "closed-end continuity" (*see Religious Technology Center*, 971 F.2d at 366-67; *Howard*, 208 F.3d at 750), the purported scheme was over before Astro Digital US was formed.

Moreover, once the JV's assets were allegedly diverted, and Canopus went out of business (*id.* ¶ 68), Astro Digital could no longer have been in competition with the defunct JV. Accordingly, there could be no open ended continuity because there was no threat of any potential future violations.  *See Allwaste, Inc.*, 65 F.3d at 1526; *see also Petroleos Mexicanos v. Hewlett-Packard Co.*, Case No. 14-cv-05292-BLF, 2015 WL 9592606, at *11 (N.D. Cal. July 13, 2015) (where predicate acts occurred over a seven month period, and alleged prior acts did not violate the Travel Act, complaint did not plead closed-end continuity).  In sum, because Plaintiffs have not met the pattern requirement, their RICO claims must be dismissed as to Biddy and the Astro Digital entities.

### 4. The Astro Digital Entities Cannot Be Liable for RICO Violations Where They Were Alleged to Be Passive Recipients of the Assets Diverted from the JV

Where the Astro Digital entities are alleged to have been the passive recipients of the allegedly diverted assets (*see, e.g.*, Comp. ¶¶ 51-52, 54, 57-58), that is insufficient to plead that they conducted the affairs of the alleged enterprise through a pattern of racketeering activity.  *See Schreiber Distrib. Co.*, 806 F.2d at 1396-97; *see also Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 747 F.2d 384, 402 (7th Cir. 1984) (under section 1962(c) corporation can only be liable for receiving proceeds of racketeering activity where it is also liable as a principal).

Because Plaintiffs have not pled facts indicating that the entity defendants did more than receive the JV's assets, the RICO claims must be dismissed as to the Astro Digital entities.

### D. Plaintiffs Have Not Pled Facts Supporting their Contention that Biddy and the Astro Digital Entities Participated in a RICO Conspiracy

"Although plaintiffs need not allege that each defendant personally used the mail or wires, they must allege facts showing the existence of a fraudulent scheme and that each defendant 'knowingly cause[d]' use of the mails or wires to further that alleged scheme." *Eclectic*

1    *Properties East*, 2012 WL 713289, at *4 (citing 18 U.S.C. § 1341); *see also id.* at *6 ("Section

2    1962(c)'s requirements must be established as to each individual defendant.").

3        "To establish a violation of section 1962(d), Plaintiffs must allege either an agreement that

4    is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a

5    violation of two predicate offenses." *Howard*, 208 F.3d at 751.  Where a plaintiff fails to plead a

6    substantive RICO violation, there can be no RICO conspiracy.  *See ibid.*

7        Accordingly, Plaintiffs' failure to state a substantive RICO claim against Biddy and the

8    Astro Digital entities requires dismissal of the RICO conspiracy claim.

9    **E.    Plaintiffs' Claim for Unjust Enrichment Must be Dismissed**

10        Unjust enrichment is not a cause of action but instead is a quasi-contract claim that

11   provides for restitution to a plaintiff where a defendant "has been unjustly conferred a benefit

12   'through mistake, fraud, coercion, or request.'" *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d

13   753, 762 (9th Cir. 2015).  The key is that the defendant must have received an unwarranted

14   benefit.  Here, there can be no recovery for unjust enrichment where Plaintiffs have not pled the

15   underlying UCL and RICO claims against Biddy and the Astro Digital entities.

16   **IV.    CONCLUSION**

17        After untangling the thicket of allegations in the Complaint, what becomes clear is that

18   Plaintiffs' claims are not really directed at Biddy or the Astro Digital entities.  Rather, these

19   Defendants — whose roles were minor and essentially passive — have been brought into this

20   case solely to pad out the allegations and make it appear that the Defendants formed a RICO

21   enterprise and a conspiracy.  Plaintiffs' real dispute is with Kokorich.  Because the Complaint

22   fails to state a UCL or RICO claim against Biddy, Astro Digital US, or Astro Digital, these claims

23   must be dismissed as to each of these Defendants.  Moreover, Plaintiffs cannot recover for unjust

24   enrichment where they have not stated a claim for any underlying wrongdoing.

25        For these reasons, the Complaint must be dismissed as to Chris Biddy, Astro Digital, Inc.,

26   and Astro Digital US, Inc.  And, because of the inherent deficiencies in the claims as to these

27   defendants, they should be dismissed with prejudice.

28

*Ropers Majeski Kohn & Bentley*
*A Professional Corporation*
*Redwood City*

1    Dated:        November 27, 2019            ROPERS, MAJESKI, KOHN & BENTLEY

2

3                                               By: /s/  Nicole S. Healy
                                                    _____
4                                                   TODD A. ROBERTS
                                                    NICOLE S. HEALY
5                                                   EDWIN BARNES
                                                    Attorneys for Defendants
6                                                   CHRIS BIDDY, ASTRO DIGITAL US
                                                    INC., AND ASTRO DIGITAL, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City