UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AMBERCROFT TRADING LIMITED, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CHRIS BIDDY, et al.,<br><br>Defendants. | Case No. 19-CV-06810-LHK<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION; DENYING AS MOOT MOTIONS TO DISMISS; AND STAYING CASE**<br><br>Re: Dkt. Nos. 15, 18 |

Before the Court are Defendants Astro Digital US, Inc., Astro Digital, Inc., and Chris Biddy's motion to dismiss, ECF No. 13; Defendants' Mikhail Kokorich and Liudmila Kokorich's motion to compel arbitration, ECF No. 15; and Defendants' Mikhail Kokorich and Liudmila Kokorich's motion to dismiss, ECF No. 18. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS the motion to compel arbitration, DENIES as moot the motions to dismiss, and STAYS the case.

## I. BACKGROUND

Plaintiff Dmitri Kushaev ("Kushaev") is a citizen of Russia currently residing in Switzerland and is the beneficial owner and manager of Plaintiff Ambercroft Trading Limited

1
Case No. 19-CV-06810-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION; DENYING AS MOOT MOTIONS TO DISMISS; AND STAYING CASE

("Ambercroft"), a company registered in the British Virgin Islands. ECF No. 1, Ex. 1 ("Compl.") ¶ 4–5. The Court refers to Kushaev and Ambercroft collectively as "Plaintiffs". Plaintiffs bring the instant suit against Defendants Mikhail Kokorich, his wife Liudmilia Kokorich, Chris Biddy, Astro Digital US, Inc., and Astro Digital, Inc. *Id.* ¶¶ 6–11.

Plaintiffs allege that Defendant Mikhail Kokorich carried out a "fraudulent scheme" with the other Defendants to "convince[] Plaintiffs to invest $10 million into a joint venture" only to "divert[] and misappropriate[] the key assets of that Joint Venture." *Id.* ¶ 1. Plaintiff Kushaev and Defendant Mikhail Kokorich allegedly first reached an oral agreement to form the joint venture (the "Joint Venture Agreement"), whereby both parties would form companies through which to effectuate the Joint Venture Agreement. *Id.* ¶ 21. Accordingly, Plaintiff Kushaev formed Ambercroft, and Defendant Mikhail Kokorich formed Dauria Holding International Limited ("DHIL"). *Id.* ¶¶ 23–24. By way of a written agreement containing an arbitration provision (the "DHIL Agreement"), Plaintiffs acquired a 14.29% interest in DHIL. *Id.* ¶ 24. However, Plaintiffs allege that subsequently, Defendant Mikhail Kokorich formed a number of competing companies (including Defendant Astro Digital US, Inc. and Astro Digital, Inc.) and diverted the assets of DHIL to those new companies.

Accordingly, on August 8, 2019, Plaintiffs filed the instant suit in the California Superior Court for the County of Santa Clara. ECF No. 1 ¶ 1. The case was removed to this Court on October 21, 2019. *See id.* Plaintiffs assert six claims against Defendants: (1) breach of fiduciary duty, (2) fraud, (3) violation of California's Unfair Competition Law, (4) Racketeer Influenced and Corrupt Organizations Act ("RICO") violation under 18 U.S.C. 1962(c), (5) RICO violation under 18 U.S.C. § 1962(d), and (6) unjust enrichment. *See* Compl. at 1. In response, Defendants filed two separate motions to dismiss and a motion to compel arbitration.

First, on November 27, 2019, Defendants Biddy, Astro Digital US Inc., and Astro Digital, Inc. filed a motion to dismiss. ECF No. 13. On January 20, 2020, Plaintiffs filed an opposition. ECF No. 25. On February 14, 2020, Defendants filed a reply. ECF No. 30.

2

Second, on November 27, 2019, Defendants Mikhail Kokorich and Liudmila Kokorich filed a motion to compel arbitration.[1] ECF No. 15 ("Mot."). On January 20, 2020, Plaintiffs filed an opposition. ECF No. 24 ("Opp'n"). On February 14, 2020, Defendants filed a reply. ECF No. 32 ("Reply").

Third, on November 27, 2019, Defendants Mikhail Kokorich and Liudmila Kokorich filed their own motion to dismiss. ECF No. 18. On January 20, 2020, Plaintiffs filed an opposition. ECF No. 26. On February 14, 2020, Defendants filed a reply. ECF No. 31.

All three motions are thus fully briefed and properly before the Court.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to arbitration agreements in any contract affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9 U.S.C. § 2. Under Section 3 of the FAA, "a party may apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 3).

Interpretation of arbitration agreements generally turns on state law. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). However, the United States Supreme Court has stated that "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute," and that "[t]he court is to make this determination by applying the federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). The FAA creates a body of federal substantive law of arbitrability that requires a healthy regard for the federal policy favoring arbitration and preempts state law to the contrary. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-79 (1989)

---

[1] The Kokorich Defendants' motion to compel arbitration and motion to dismiss both contain a notice of motion that is separately paginated from the memorandum of points and authorities in support of the motion. Civil Local Rule 7-2(b) provides that the notice of motion and points and authorities should be contained in one document with a combined limit of 25 pages. *See* Civ. Loc. R. 7-2(b).

3

Case No. 19-CV-06810-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION; DENYING AS MOOT MOTIONS TO DISMISS; AND STAYING CASE

("[T]he FAA must be resolved with a healthy regard for the federal policy favoring arbitration.").

To decide whether a dispute is arbitrable under federal law, a court must answer two questions: (1) whether the parties agreed to arbitrate; and, if so, (2) whether the scope of that agreement to arbitrate encompasses the claims at issue. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). As to the first question, when deciding whether the parties agreed to arbitrate a certain matter, courts generally apply ordinary state law principles of contract interpretation. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts generally should apply ordinary state-law principles governing contract formation in deciding whether [an arbitration] agreement exists."). Thus, the court ordinarily applies "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). If the party seeking to compel arbitration establishes both factors, the court must compel arbitration. *See Chiron Corp.*, 207 F.3d at 1130. "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." *Republic of Nicar. v. Std. Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

In addition, the parties can agree to delegate arbitrability—or "gateway" issues concerning the scope and enforceability of the arbitration agreement, and whether the dispute should go to arbitration at all—to the arbitrator. The United States Supreme Court has held that the question of "who has the power to decide arbitrability," the court or the arbitrator, "turns on what the parties agreed about that matter." *First Options*, 514 U.S. at 943. "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on

4

any other." *Rent-A-Center*, 561 U.S. at 70. "[Q]uestions of arbitrability may go to the arbitrator . . . when the parties have demonstrated, clearly and unmistakably, that it is their intent to do so." *Id.* at 80. The Ninth Circuit—along with "[v]irtually every circuit to have considered the issue"— has expressly held that incorporation of arbitration rules, such as the American Arbitration Association's rules, "constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130 (quoting *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013)).

## III. DISCUSSION

Defendants Mikhail Kokorich and Liudmila Kokorich (collectively, the "Kokorich Defendants") seek to compel arbitration based upon an arbitration clause contained in the DHIL Investment and Shareholders Agreement (the "DHIL Agreement"). Mot. at 1; *see* ECF No. 17, Ex. A ("DHIL Agmt."). The parties to the agreement included DHIL, Plaintiff Ambercroft, Plaintiff Kushaev, and Defendant Mikhail Kokorich. DHIL Agmt. at 1. The DHIL Agreement contains a clause that specifies:

> All and any disputes or differences arising out of or in connection with this Agreement, or its breach, termination or invalidity . . . shall be finally settled by arbitration in accordance with the Rules of Arbitration of the International Chamber of Commerce ("ICC") in force as at the time of the Dispute.

*Id.* ¶ 13.2.

As an initial matter, the parties do not dispute that the Federal Arbitration Act ("FAA") governs this arbitration agreement. Mot. at 5; Opp'n at 7; *see also Baysand Inc. v. Toshiba Corp.*, No. 15-cv-02425-BLF, 2015 WL 7293651, at *2 (N.D. Cal. Nov. 19, 2015) (explaining that the FAA governs arbitration agreements between international contracts where parties are not all United States citizens). Further, the Court agrees with Kokorich Defendants that United States federal arbitrability law applies to determine whether Plaintiff's claims are arbitrable, despite the parties' choice of English law to generally govern the agreement. Mot. at 6 n.6; *see Cape Flattery Ltd. v. Titan Mar.*, 647 F.3d 914, 921 (9th Cir. 2011) (holding that "federal law applies to determine arbitrability" where the choice of English law in a contract generally was nonetheless

5
Case No. 19-CV-06810-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION; DENYING AS MOOT MOTIONS TO DISMISS; AND STAYING CASE

silent as to the specific issue of arbitrability). Accordingly, pursuant to the FAA and federal law of arbitrability, the Court must first decide whether the parties have agreed to arbitrate, and second whether the scope of that arbitration agreement encompasses the claims at issue. *See Brennan*, 796 F.3d at 1130. The Court addresses each question in turn.

**A. Plaintiffs agreed to arbitrate claims in the DHIL Agreement.**

Plaintiffs do not dispute that the DHIL Agreement provision above requires the parties to arbitrate "[a]ll and any disputes or differences arising out of or in connection with" the DHIL Agreement. DHIL Agmt. ¶ 13.2; *see* Opp'n at 9–18. Moreover, although Defendant Liudmila Korkorich was not a party to the DHIL Agreement, Plaintiffs do not argue that she may not invoke the arbitration provision because she was a nonparty. *See* Opp'n at 17–18. Instead, Plaintiffs merely reiterate that Defendant Liudmila Kokorich's ability to compel arbitration fails for the same reasons as Defendant Mikhail Kokorich. *See id.* at 17 ("Liudmila Kokorich cannot enforce the arbitration provision in the DHIL Agreement for the same reasons that Mikhail Kokorich cannot enforce that provision."). Plaintiffs further argue that the Joint Venture Agreement did not contain any arbitration provision, and as such, neither Defendant Mikhail Kokorich nor Defendant Liudmila Kokorich may compel arbitration. *See id.* at 17–18; *see also Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985–86 (9th Cir. 2017) (reversing district court where arbitrability of claims against a non-signatory to the arbitration agreement should have been decided by arbitrator).

Accordingly, the Court agrees with Defendants that there is no dispute as to the existence of the parties' agreement to arbitrate. *See* Reply at 1.

**B. The Court need not construe the scope of the DHIL Agreement arbitration because the parties delegated the question of arbitrability to the arbitrator.**

As to the scope of the parties' arbitration agreement, the parties dispute whether the DHIL Agreement arbitration provision applies to Plaintiff's claims in the instant case. The Kokorich Defendants first argue that, under the rules of the ICC, the issue of arbitrability is delegated to an arbitrator. Mot. at 6–8. They next argue that, even if the Court were to decide for itself the issue

6

of arbitrability, the Court should still find Plaintiffs' claims arbitrable. Mot. at 8–11. Because the Court agrees with the Kokorich Defendants' first argument that the parties delegated the issue of arbitrability to the arbitrator, the Court does not reach the Kokorich Defendants' second argument.

**1. The Parties' Agreement Delegates the Question of Arbitrability to the Arbitrator**

Under the arbitration provision in the DHIL Agreement, the parties' arbitration of any dispute would be conducted under "the Rules of Arbitration of the International Chamber of Commerce ("ICC") in force as at the time of the Dispute." DHIL Agmt. ¶ 13.2. The applicable ICC rules provide that:

> [I]f any party raises one or more pleas concerning the existence, validity or scope of the arbitration agreement or concerning whether all of the claims made in the arbitration may be determined together in a single arbitration, *the arbitration shall proceed and any question of jurisdiction or of whether the claims may be determined together in that arbitration shall be decided directly by the arbitral tribunal* . . .

Mot. at 7; *see* ECF No. 16, Ex. A ("ICC Arbitr. Rules"), at 14. This provision in the ICC Rules of Arbitration is "clear and unmistakable evidence" that the parties delegated the threshold question of arbitrability to be decided by the arbitrator, not the Court. *See Portland Gen. Elec. Co.*, 862 F.3d at 985 ("We have found such delegation when the parties have incorporated by reference the rules of the American Arbitration Association ("AAA"), which state in relevant part that the 'arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement.'"). Crucially, Plaintiffs do not dispute that they agreed to this arbitration provision, or that such arbitration provision does in fact delegate the threshold question of arbitrability to the ICC. *See* Opp'n at 9–10.

Instead, Plaintiffs raise three arguments that the issue of arbitrability was not delegated to the arbitrator. Plaintiffs argue that, where there are multiple contracts at issue, the court must analyze the claims in a complaint to determine whether the claims arise from the contract with the arbitration provision. *Id.* at 9–10. Plaintiffs further argue that the Joint Venture Agreement did not contain any arbitration provision. *Id.* at 9. Finally, Plaintiffs argue that the parties' factual dispute on this question precludes the Court from finding that the parties clearly and unmistakably

7
Case No. 19-CV-06810-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION; DENYING AS MOOT MOTIONS TO DISMISS; AND STAYING CASE

agreed to have the arbitrator resolve the question of arbitrability. *Id.* at 10. None of Plaintiffs' arguments are persuasive, and the Court addresses each in turn below.

First, Plaintiffs argue that the existence of multiple contracts in this case requires the Court to perform the threshold analysis of arbitrability. Opp'n at 9. However, to support this proposition, Plaintiffs cite cases that are neither binding nor analogous. Specifically, Plaintiffs cite two out-of-circuit cases: *Dental Assocs., P.C. v. Am. Dental Partners of Michigan, LLC*, 520 F. App'x 349, 351–52 (6th Cir. 2013), and *Int'l Underwriters AG v. Triple I: Int'l Investments, Inc.*, 533 F.3d 1342, 1344–49 (11th Cir. 2008). Most importantly, neither case considered whether the parties delegated the issue of arbitrability to the arbitrator. *See Assocs., P.C.*, 520 F. App'x at 351–52; *Int'l Underwriters*, 533 F.3d at 1344–49. Instead, as this Court has previously held, where there are multiple agreements between the parties, the parties' delegation of the issue of arbitrability to the arbitrator in one agreement requires the arbitrator, not the Court, to decide whether Plaintiffs' claims fall within the scope of the arbitration agreement. *See Guidewire Software, Inc. v. Chookaszian*, No. 12-CV-03224-LHK, 2012 WL 5379589, at *4–5 (N.D. Cal. Oct. 31, 2012)). Plaintiffs provide no authority contrary to *Guidewire*.

Second, Plaintiffs attempt to distinguish the parties' Joint Venture Agreement from the DHIL Agreement. *Id.* Because the parties' oral Joint Venture Agreement did not contain an arbitration provision, Plaintiffs argue, the parties did not "clearly and unmistakably" delegate to the ICC the power to determine whether any claims premised on the Joint Venture Agreement are arbitrable. *Id.*; *see Portland Gen. Elec. Co.*, 862 F.3d at 985. However, Plaintiffs' argument fails to address the existence of the arbitration agreement in the separate DHIL Agreement. Nor do the terms of the separate Joint Venture Agreement undermine the Court's conclusion that the DHIL Agreement's arbitration provision *does* in fact delegate the issue of arbitrability to the arbitrator. As discussed above, the delegation of the issue of arbitrability in one of the parties' agreements requires the arbitrator, not the Court, to assess which of the parties' agreements are implicated by Plaintiffs' claims.

8

Case No. 19-CV-06810-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION; DENYING AS MOOT MOTIONS TO DISMISS; AND STAYING CASE

Third, Plaintiffs argue that there are "disputes of material fact" that "preclude the Court from finding that the parties' 'clearly and unmistakably' agreed to send the gateway questions of arbitrability to the arbitrator." Opp'n at 10. But Plaintiffs do not demonstrate that there is any dispute of fact whatsoever as to the arbitration agreement in the DHIL Agreement, or as to whether that arbitration agreement delegates the issue of arbitrability to the arbitrator. *See id.* Plaintiffs cite Plaintiff Dmitri Kushaev's Declaration, ECF No. 24-1 ("Kushaev Decl."), but that declaration merely states:

> While the written DHIL Agreement contains an arbitration provision, the oral Joint Venture Agreement contains no such provision or term. I never agreed to arbitrate any disputes concerning the Joint Venture Agreement, and I never believed that the arbitration provision in the separate DHIL Agreement governed or applied to my separate Joint Venture Agreement with Mr. Kokorich.

*Id.* ¶ 7. Plaintiffs have identified no dispute of fact as to the DHIL Agreement, and particularly raise no dispute that the parties intended to have the arbitrator decide the threshold issue of whether a claim is arbitrable pursuant to the DHIL Agreement.

Accordingly, the Court holds that the parties "clearly and unmistakably" agreed to have the ICC resolve any threshold questions of arbitrability. *See Portland Gen. Elec. Co.*, 862 F.3d at 985 (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002)).

### 2. The Kokorich Defendants' assertion that the DHIL Agreement arbitration provision applies to Plaintiffs' claims is not "wholly groundless."

Because the parties have delegated the question of arbitrability to the ICC, the Court's inquiry is theoretically at an end. *See, e.g.*, *Brennan*, 796 F.3d at 1132 (9th Cir. 2015) ("[A] court *must* enforce an agreement that, as here, clearly and unmistakably delegates arbitrability questions to the arbitrator." (emphasis added)).

However, there is one final hurdle that the Kokorich Defendants may have to clear. Some circuits have adopted the rule that a delegation clause "applies only to claims that are at least arguably covered by the agreement to arbitrate," which the Kokorich Defendants' frame as a test to see if their invocation of the arbitration agreement is "wholly groundless." Mot. at 8 (citing *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1374 (Fed. Cir. 2006)). Whether this requirement

9

Case No. 19-CV-06810-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION; DENYING AS MOOT MOTIONS TO DISMISS; AND STAYING CASE

applies is unclear because the Ninth Circuit recently stated that the "arguably covered" rule is "not universally followed." *Portland Gen. Elec. Co.*, 862 F.3d 981, 986 n.3 (9th Cir. 2017). For example, the Ninth Circuit cast doubt on the reasoning of a Sixth Circuit case employing the "arguably covered" rule. *Oracle*, 724 F.3d at 1076. In *Portland Gen. Elec. Co.*, the Ninth Circuit concluded that it "need not take a side in this circuit split, or determine if we already have" because the delegation clause in that case "arguably covered" the claim at issue. 862 F.3d at 986 n.3.

In an abundance of caution, the Court applies the same approach in this case and reaches the same conclusion. Arguably, Plaintiffs waived any argument to the contrary because they failed to respond to the Kokorich Defendants' arguments on the "wholly groundless" question, but merely point in a footnote to their arguments on the merits. *See* Opp'n at 10 n.7. In any event, the arbitration provision at issue here requires arbitration of "[a]ll and any disputes or differences arising out of or in connection with [the DHIL Agreement], or its breach, termination or invalidity." DHIL Agmt. ¶ 13.2. As Plaintiffs explain in the Complaint, this case revolves entirely around the $10 million investment that Plaintiffs allegedly made by way of the DHIL Agreement. *See* Compl. ¶¶ 1, 21–25. Plaintiffs claim that, after they invested millions through DHIL, Defendants misappropriated those assets, resulting in "Plaintiffs' loss of their entire investment." *Id.* ¶ 1. The Court thus agrees with Defendants that Plaintiffs' claims, which allege breach of fiduciary duty, fraud, unfair business practices, civil RICO violations, and unjust enrichment, at least *arguably* "arise out of" or are "in connection with" the DHIL Agreement. *See* DHIL Agmt. ¶ 13.2. While Plaintiffs' arguments that their claims do not arise out of or are in connection with the DHIL Agreement "may ultimately prove to be correct, these arguments should be raised before the arbitrator." *See Guidewire*, 2012 WL 5379589, at *5.

In sum, even if the Kokorich Defendants are required to show that their invocation of the arbitration provision is not "wholly groundless," the Court finds that the Kokorich Defendants have cleared that hurdle. Accordingly, the Court finds that it must grant the Kokorich Defendants'

10
Case No. 19-CV-06810-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION; DENYING AS MOOT MOTIONS TO DISMISS; AND STAYING CASE

motion to compel arbitration.

**C. A stay of the instant case pending arbitration is appropriate.**

Defendants request that, if the Court compels arbitration, the Court consider staying or dismissing the case. Mot. at 8. Because the Court finds that it must compel arbitration as to Plaintiffs' claims against the Kokorich Defendants, the Court finds that staying the litigation is the most appropriate course of action.

Under Section 3 of the FAA, courts must "stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). When a court "determines that all of the claims raised in the action are subject to arbitration," the court "may either stay the action or dismiss it outright." *Johnmohammadi v. Bloomingdale's Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). The United States Supreme Court has held that "[i]n some cases, . . . it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n.23 (1983). "That decision is one left to the district court . . . as a matter of its discretion to control its docket." *Id.* "Where it is proposed that a pending proceeding be stayed, the competing interests which are affected by the granting or refusal to grant a stay must be weighed." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *see also Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (applying CMAX standard). "Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX*, 300 F.2d at 268.

In the instant case, only the Kokorich Defendants have moved the Court to compel arbitration, while the other three named Defendants have not attempted to do so. Plaintiff's opposition entirely fails to address Defendants' request to stay the case or to provide the Court

11

Case No. 19-CV-06810-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION; DENYING AS MOOT MOTIONS TO DISMISS; AND STAYING CASE

with any reason why such a course would be disadvantageous.  Regardless, the Court finds that simply letting the case proceed without the Kokorich Defendants would be both inefficient and ineffectual.  Defendant Mikhail Kokorich is the only defendant that is named in all six of Plaintiffs' claims, and his conduct with respect to Plaintiffs' investment appears to be at the center of the entire lawsuit.  *See* Compl.  It would be impracticable to attempt to cleave Defendant Mikhail Kokorich from all of Plaintiffs' claims.

Moreover, such a course would necessarily overlap with questions to be decided by the arbitrator.  For example, Plaintiffs' fifth cause of action asserts a RICO conspiracy between Defendant Mikhail Kokorich and the other defendants (except for Defendant Liudmila Kokorich). *See id.* ¶¶ 107–114.  Having one tribunal consider whether Mikhail Kokorich engaged in the RICO conspiracy and a separate tribunal consider whether the other Defendants engaged in the same alleged conspiracy with Mikhail Kokorich would needlessly complicate the issues and questions of law in this case.  *See CMAX*, 300 F.2d at 268.  Parallel proceedings would also needlessly risk inconsistent decisions.  *See, e.g.*, *Ballard v. Corinthian Colleges, Inc.*, No. C06-5256 FDB, 2006 WL 2380668, at *2 (W.D. Wash. Aug. 16, 2006) (staying a case pending arbitration, in part, to prevent "risk of inconsistent decisions and inefficiencies").

By contrast, staying the lawsuit pending the arbitration will help clarify what claims and issues will remain for the Court to decide.  For example, if the arbitrator decides that no aspects of Plaintiffs' claims are arbitrable and that the Court should consider all aspects of Plaintiffs' claims, it would waste judicial resources for the Court to have proceeded on two separate tracks with respect to the same claims and the same alleged conduct.  Thus, a stay will advance "the orderly course of justice." *CMAX*, 300 F.2d at 268; *see e.g.*, *Wilcox v. Ho-Wing Sit*, 586 F. Supp. 561, 567 (N.D. Cal. 1984) (granting stay where arbitrator's decision was likely "to decide issues that will, at least, streamline subsequent proceedings" before the court).  Furthermore, the parties raise no other reason why granting a stay would result in any damage or hardship to the parties, and the Court cannot identify any reason why this would be the case.

12

Case No. 19-CV-06810-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION; DENYING AS MOOT MOTIONS TO DISMISS; AND STAYING CASE

Accordingly, the Court, in its discretion, finds that a stay of the lawsuit is appropriate because all of Plaintiffs' claims against the remaining Defendants substantially overlap with Plaintiffs' claims against the Kokorich Defendants. The Court therefore GRANTS the Kokorich Defendants' motion to stay Plaintiffs' lawsuit pending arbitration.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Kokorich Defendants' motion to compel arbitration and stay the instant case. Accordingly, the Court DENIES as moot the Defendants' pending motions to dismiss. ECF Nos. 13, 18. The parties shall notify the Court within seven days of the arbitration ruling.

The Clerk shall administratively close the case file. This is an internal administrative procedure that does not affect the rights of the parties.

**IT IS SO ORDERED.**

Dated: April 10, 2020

_____
LUCY H. KOH
United States District Judge